**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

JONATHAN ERIC GARDINER,

Defendant.

24-cr-655-LJL (14)

**DEFENDANT'S MOTION FOR A FRANKS HEARING AND MOTION TO SUPPRESS EVIDENCE**

## PRELIMINARY STATEMENT

Jonathan Eric Gardiner moves under Franks v. Delaware, 438 U.S. 154 (1978), for an evidentiary hearing and suppression of evidence obtained from three telephones and a notebook pursuant to the May 29, 2026 warrant. The affidavit presented an affirmatively misleading picture of the currency recovered on May 12, omitted the contemporaneous Bahamian election context, and repeatedly asserted inconsistent seizure dates and legal predicates. These defects matter because the affiant expressly converted the cash into the purported contemporary nexus between historical trafficking allegations and every item searched. The warrant application also failed to identify any particularized evidentiary connection between the historical 6984 and 2595 numbers and any of the three specified IMEIs.

The defense makes a substantial preliminary showing on the face of the affidavit and the identified defense record. It requests a hearing to establish the affiant's knowledge and reckless disregard, not to postpone the materiality analysis. After excision and insertion of the material corrections, the application fails to establish a fair probability that each particular phone and the notebook contained evidence of the charged offenses. The defense

separately preserves challenges to the initial May 12 search, continued retention, and any warrantless notebook inspection; those Fourth Amendment grounds do not depend on satisfying Franks.

## I. THE AFFIDAVIT'S MISLEADING ACCOUNT OF THE CASH WAS CENTRAL TO THE NEXUS

In paragraph 11(b), Coleman described approximately B$30,000 in a brown paper bag as "labeled with the handwritten name of Politician-1." Paragraph 11(c) then characterized its packaging as consistent with narcotics proceeds, and paragraph 12 recast Gardiner as carrying "bulk cash with the name of Politician-1," immediately invoking the proposition that traffickers pay officials with drug proceeds. USAO_003905–003907. The cumulative effect was to portray the entire sum as a politician-directed narcotics payment, rather than distinct quantities with distinct packaging and provenance.

The defense record identifies only approximately B$5,000 in the politician-labeled envelope and a documented bank withdrawal of approximately B$20,000 the preceding day, as acknowledged in the Government's response at the June 25 detention hearing. The underlying bank records, photographs, inventory and hearing transcript should be annexed to substantiate these facts; counsel must verify the exact denomination and packaging against the original photographs before filing. The affidavit also omitted that May 12 was Bahamian Election Day and the pertinent absence of a political-contribution disclosure/limits framework. These are not peripheral background details: they directly qualify the inference that possession of cash bearing a politician's name demonstrates corrupt narcotics payments. The defense does not ask the Court to deem the money conclusively lawful; it asks the Court to reject the affiant's misleading conflation of the entire sum and its selective presentation of an innocent contemporaneous explanation. The

Government's disclosed photograph at USAO_003990 (Exhibit A) depicts multiple separate stacks of currency held with rubber bands inside a white bag. No politician's name or handwritten politician label is visible on the currency or its packaging in that photograph. The photograph does not, standing alone, establish the precise amount of currency or exclude a label on another item or an unseen side of the packaging. But it provides concrete, contemporaneous reason to require production of the complete photographic sequence, inventories, packaging, and contemporaneous observations supporting the affidavit's representation that approximately B$30,000 was politician-labeled. The Court should examine whether Coleman collapsed a limited labeled envelope into a description of all the cash, thereby materially distorting the inference of criminal proceeds. (Ex. A, USAO_003990.)

The photographs now produced underscore the need to distinguish the actual packaging from the affidavit's categorical description. USAO_003990 depicts separate rubber-banded stacks of currency inside a white bag; no politician label is visible in that frame (Ex. A). USAO_004045 depicts additional currency bundles and torn white wrapping bearing handwriting that appears to contain the name of "Politician One". The photograph does not establish the amount or the identity of the writer, and the defense does not contend that these selected photographs comprise the entire seizure. It does show why the affidavit's suggestion that the entire B$30,000 was politician-labeled cannot be accepted without segregation, counting, and examination of the full photographic sequence. USAO_004035 depicts the three photographed telephones with temporary identifying notes (Ex. B), supporting the demand for contemporaneous SIM, number, and IMEI attribution records rather than inference from the historic 6984 number alone.

The Second Circuit has expressly declined to treat possession of a substantial amount of cash as per se evidence of narcotics trafficking. United States v. $31,990 in U.S. Currency, 982 F.2d 851, 855–56 (2d Cir. 1993). The court also explained that rubber-band bundling and plastic-bag packaging, although potentially probative, cannot replace additional facts tying currency to a controlled-substance transaction. Id. at 855–56. That decision arose under the former civil-forfeiture probable-cause framework, not a criminal search-warrant application; Defendant invokes its reasoning by analogy, not as a categorical warrant rule.

Here, the affidavit allegedly collapsed distinct bundles and sources of Bahamian currency into a single politician-labeled narcotics inference. The defense submits that the segregated envelope, bank-withdrawal evidence, and election-day circumstances must be considered with the remaining affidavit allegations rather than treated as conclusive proof of trafficking. Unlike a claim that carrying cash is necessarily innocent, this argument challenges the materially misleading account of what the agents actually found and knew.

## II. THE AFFIDAVIT MISSTATED WHEN THE PROPERTY WAS SEIZED AND OBSCURED PRIOR ACCESS

Coleman's affidavit contains inconsistent dates: paragraphs 3(a)–(d) describe the items as seized incident to an arrest on May 14, 2026, while paragraph 11(e) identifies May 16 as the arrest date. Neither account reconciles the defense evidence that federal officers first took possession of Gardiner and his property following the May 12 rescue. The contemporaneous Middle District of Florida docket independently records an arrest and initial appearance on May 15. *See United States v. Gardiner*, No. 6:26-mj-01583-NWH (M.D. Fla.), ECF Nos. 1, 4 (May 15, 2026). These competing dates warrant examination

of what Coleman knew, when the devices were actually seized, and the basis for any purported search incident to arrest.

The discrepancy is particularly consequential for the notebook. Footnote 5 to paragraph 11(d) admits that officers opened the cover of the waterlogged notebook before the warrant and observed what "appeared to contain notations regarding payments." USAO_003906. That observation is the only item-specific purportedly incriminating fact concerning the notebook. The Government must identify precisely what was exposed without manipulation, who opened the notebook, what was viewed, whether pages were turned, and whether the asserted drying purpose was a pretext for examination. If the payment notation was exposed through an impermissible evidentiary inspection, the warrant's notebook nexus must be reassessed without that observation. This is a distinct suppression issue, not automatically a Franks violation merely because the inspection occurred.

The affidavit's own formulation raises a critical limitation: an officer may take reasonable steps to preserve wet property, but the asserted drying purpose does not automatically authorize inspection of private written entries. Coleman reports that officers opened the cover and observed what appeared to be payment notations, then states that no further review occurred. USAO_003906 n.5. The application does not identify the officer, the notebook's precise condition, whether pages adhered together, whether the writing was visible immediately upon opening the cover, whether any interior pages were separated, or whether photographs or transcriptions preceded the May 29 warrant. Those omissions prevent the Court from determining whether the payment characterization resulted from an incidental observation or an evidentiary examination. The defense requests a separate

evidentiary hearing on the prewarrant notebook inspection, with the original notebook, all notebook photographs, property and preservation logs, body-camera footage if any, and testimony of every officer who opened or examined it. The Government should also identify every passage in the affidavit derived from that inspection and any later forensic review or derivative lead.

The notebook issue also bears on Franks materiality, but the theories must be distinguished. The footnote disclosed that the cover was opened, so its mere inclusion cannot itself constitute a concealed search. The relevant Franks inquiry is whether the affiant knew or recklessly disregarded additional facts that made the limited "drying" account materially misleading—for example, purposeful inspection of internal pages or more extensive review than disclosed. The separate Fourth Amendment challenge concerns whether the prewarrant conduct was lawful, irrespective of affiant intent. After excluding any unlawfully obtained payment observation from the independent-source analysis, the Government must show that the notebook warrant rested on genuinely untainted probable cause and was not prompted by the earlier inspection.

## III. THE MAY 12 SEIZURE, THE AFFIDAVIT'S CONTRARY ARREST NARRATIVE, AND THE UNEXPLAINED CUSTODY PERIOD

The warrant affidavit acknowledges that Gardiner's bag and its contents were encountered when he was rescued on May 12, 2026, and that CBP searched the bag under asserted border authority. Yet Coleman repeatedly describes the telephones and notebook as having been seized incident to a later arrest, including May 14 in paragraph 3 and May 16 in paragraph 11. See USAO_003899–003900, 003905–003907. The defense contends that federal officers actually took control of Gardiner and the property on May 12 and retained the items continuously. A seizure date is not interchangeable with a later transfer

to DEA custody, arrest booking, or filing of charges. The Court should require the contemporaneous rescue, hospital, CBP, DEA, inventory, transfer, and detention records to determine what the affiant knew when he signed the application.

This chronology is material in two distinct ways. First, describing the property as seized incident to a May 16 arrest could misleadingly supply an arrest-based justification for an acquisition that actually occurred four days earlier under a different asserted exception. Second, omitting the length and circumstances of precomplaint federal custody prevents the issuing magistrate from assessing whether the Government's acquisition, retention, and prewarrant access were lawful. The defense seeks a Franks hearing if the evidence establishes that Coleman knowingly or recklessly misstated the operative seizure chronology and that correcting it undermines probable cause or a material asserted predicate for the warrant. *Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978); *United States v. Rajaratnam*, 719 F.3d 139, 146–47 (2d Cir. 2013). A chronology error, without the required materiality and state of mind, does not independently compel a Franks hearing.

The Government must separately identify the legal authority for restraining Gardiner from May 12 until the criminal complaint and any subsequent judicial probable-cause determination. If the restraint constituted a warrantless criminal arrest, the Fourth Amendment required probable cause at its inception and a prompt judicial determination for continued detention. *Gerstein v. Pugh*, 420 U.S. 103, 111–14, 125 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). Ordinarily a determination within 48 hours satisfies the promptness requirement; after 48 hours, the Government must

demonstrate a bona fide emergency or extraordinary circumstance. *Id.* The filing date of a complaint is not itself proof of when a judicial probable-cause determination occurred.

The defense recognizes that emergency medical transport, immigration inspection or parole, and criminal arrest implicate different statutory and constitutional predicates. It does not assume that every period of hospitalization under official supervision was necessarily a criminal arrest. It requests the claimed statutory authority, the identity of the agency exercising custody, the time Gardiner was free (if ever) to depart or return to the Bahamas, any immigration parole or detention documents, the time and basis of any criminal probable-cause determination, and any judicial process predating the complaint. The fact that the rescue was involuntary and Gardiner was allegedly guarded and deprived of his telephones is relevant to whether the restraint was custodial in substance, but the Court must resolve that question on evidence.

The defense also seeks suppression of evidence obtained by exploitation of any unlawful seizure or detention, subject to the Government's opportunity to establish attenuation, independent source, inevitable discovery, or another applicable exception. An unlawful detention does not automatically invalidate a later warrant or require suppression of all evidence. The defense requests a separate suppression hearing on the May 12 seizure, continued property retention, any prewarrant inspection, and the causal relationship between any illegality and the challenged evidence.

## III. THE AFFIDAVIT FAILED TO CONNECT ANY IDENTIFIED DEVICE TO THE HISTORICAL COMMUNICATIONS

The warrant lists three specific devices: iPhone SE IMEI 356838117903602, iPhone 12 Pro IMEI 354523338700993, and Samsung Galaxy 24 IMEI 351123966132727. USAO_003898–003900. The historical Georgia account is associated with the number

ending 6984; CS-2 reportedly identified a separate number ending 2595. Although Gardiner later gave CBP the 6984 number as his own, the affidavit does not identify which, if any, of those numbers was assigned to any of the seized devices, whether the devices existed or were used during the relevant 2023–2024 communications, or any contemporaneous incriminating communication on a particular seized device. Instead, paragraphs 12–16 rely on generalized propositions about what phones can store and how old data can persist. USAO_003907–003911. Possession of three phones does not dispense with the need for an adequate evidentiary nexus under the totality of the circumstances.

The Georgia warrant was issued October 31, 2023, in NDGA No. 1:23-MC-1811, on Special Agent Bruce Hernandez's application identifying andrewrosebud@icloud.com as associated with (242) 455-6984 and believed used by "Progress." USAO_004702–004703. Apple received process November 1 and produced records November 9, 2023. USAO_004700–004701. Gardiner subsequently supplied 6984 as his telephone number to CBP officers following the May 12, 2026 rescue. That admission supplies a real attribution link; the defense does not dispute its occurrence. But a 2026 identification of a telephone number does not, without more, establish which of the three seized IMEIs contained historical account content, who authored each 2023 message, or whether the 2023 Apple production connected any seized device to the charged transactions. The Court should require the Government to identify the actual technical and temporal bridge, rather than infer it from the common number alone. This is a challenge to the individualized 2026 device nexus, not an assertion that the 2023 warrant was issued without judicial authorization.

The controlling nexus analysis is addressed in *United States v. Silva*, 146 F.4th 183 (2d Cir. 2025). Silva holds that the Government need not show that a device was itself used to commit the offense, but must establish a fair probability that the device contains evidence of the crime; generalized agent expertise alone is insufficient absent corroborating case-specific facts. Id. In Silva, the court found an adequate nexus based on the alleged offenses, informant information, the affiant's expertise, and the fact that only one telephone was found on the defendant. Here, by contrast, officers seized three phones, and Defendant challenges the failure to connect the historical numbers or alleged communications to any particular device. Defendant recognizes that Silva rejects a rigid requirement of proof that each device was used in the offense; the question remains whether the affidavit's combined facts supplied an adequate evidentiary nexus to the three devices searched.

## IV. THE AFFIDAVIT COMBINED UNVERIFIED SOURCE ASSERTIONS WITH A MISLEADING CONTEMPORARY NEXUS

Paragraph 10(g) attributes to Orozco-Toro statements about "Eric" and "Player" during a September 2024 recorded meeting; paragraph 10(h) attributes the 2595 number, multiple-phone practice, and alleged laundering through construction contracts to CS-2. USAO_003903–003904. The affidavit does not identify a direct communication between Gardiner and Orozco-Toro in that meeting, and the statements must not be inflated into firsthand confirmation of Gardiner's participation. The construction-contract allegation is not itself evidence of laundering absent identified transactions.

To the extent notebook entries were exposed solely during reasonable preservation of water-damaged property, the Government may contend the initial observation was lawful. But preservation does not itself authorize a general evidentiary review. The defense requests an evidentiary hearing and, if warranted, excision of observations derived from an

unlawful prewarrant search before reassessing probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978); *United States v. Rajaratnam*, 719 F.3d 139, 146–47 (2d Cir. 2013).

The notebook presents an additional issue. Coleman's affidavit, ¶ 11(d) n.5 (USAO_003906), affirmatively discloses that officers opened the wet notebook ostensibly to dry it and observed apparent payment entries, while representing that they did not further review it. Government photographs USAO_003991–004034 show extensive, separately photographed interior notebook pages, including names, figures, and apparent household/construction notes. The photographs establish a later systematic visual record of notebook contents, but their Bates numbers alone do not establish that the photography preceded the May 29 warrant. The Court should require the original image metadata, evidence-processing records, chain of custody, and testimony establishing when the pages were separated, read, and photographed, and should determine whether the warrant affidavit omitted a materially more extensive prewarrant examination.

The defense recognizes controlling intervening authority: *United States v. Alisigwe*, No. 24-960, 2026 WL 2751713 (2d Cir. Sept. 17, 2026), holds that manual searches of travelers' phones at the border are routine searches requiring neither a warrant nor individualized suspicion. Gardiner preserves the distinction between a contemporaneous CBP border inspection and any subsequent DEA examination for ordinary criminal investigative purposes, as well as the factual question whether the border doctrine applies to the precise circumstances of his involuntary medical-rescue arrival. Alisigwe cannot be disregarded, and the present photographic record alone does not establish an unlawful phone search.

The photograph at USAO_004035 depicts three devices with handwritten notes bearing IMEI or other identifiers. The image does not reveal whether an identifier was taken from external hardware, a packaging label, a device settings screen, a dialer code, or a forensic extraction; nor does it establish when the identifiers were obtained. The Government should identify the method, date, actor, and claimed legal authority for each prewarrant access. *See Riley v. California*, 573 U.S. 373, 386, 401–02 (2014).

## V. INDEPENDENT GROUNDS FOR SUPPRESSION: INITIAL SEIZURE, PREWARRANT SEARCHES, AND THE MAY 29 WARRANT

### A. The initial May 12 acquisition and subsequent retention require separate Fourth Amendment analysis.

The affidavit acknowledges that the phones and notebook were found in Gardiner's bag following his rescue on May 12, 2026, and describes an initial CBP bag search. It nevertheless repeatedly characterizes the property as seized incident to arrests on inconsistent later dates. The Government should be required to identify the precise place and circumstances of the rescue, the location and legal status of each search, the asserted border or other exception, and the dates and authority for continued retention. A lawful initial inventory or border examination does not, without further analysis, resolve the lawfulness of subsequent investigative access or the scope of later forensic searches. The defense seeks suppression of evidence obtained through any unconstitutional seizure or examination, subject to findings after an evidentiary hearing.

### B. The prewarrant notebook inspection must be examined independently of Franks.

Coleman disclosed that officers opened the cover of the waterlogged notebook and observed apparent payment notations before issuance of the May 29 warrant. USAO_003906 n.5. The defense does not assert that reasonable preservation measures are

categorically prohibited; rather, the Government must establish what officers actually did and whether an evidentiary inspection exceeded the scope of any legitimate preservation or inventory purpose. The subsequent photographic sequence, USAO_003991–004034, does not itself establish when the pages were photographed. If the prewarrant inspection was unlawful, the Court should determine whether the later warrant was genuinely independent of that inspection and suppress the unlawfully obtained evidence and its fruits where the applicable exceptions are not met. *See Murray v. United States*, 487 U.S. 533, 537–42 (1988).

**C. The phones require a supported nexus to the evidence sought, not merely a general inference that phones store data.**

A warrant application must establish a fair probability that evidence of the offenses under investigation will be found in the particular place or device to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The defense submits that a generalized premise that traffickers commonly use phones cannot substitute for a particularized assessment of these three devices, especially where the cited communications concerned earlier years and the affidavit did not establish that the seized devices were the instruments used for those communications. *See United States v. Silva*, 146 F.4th 183 (2d Cir. 2025) (assessing the totality of the facts supporting a device-specific nexus). The Government may rely on the full investigation, not cash alone; the defense therefore requests a corrected-affidavit assessment of the entire showing rather than a categorical rule that currency can never contribute to probable cause.

**D. The May 14 warrant date, May 15 appearance, and May 19 detention order do not resolve the May 12–14 custody.**

The defense's contemporaneous filings report that Gardiner was under armed guard for only a few hours at a hospital on May 12, was then transported to a Port Canaveral holding cell, and thereafter was held in county detention facilities. The defense contends he was not free to leave at any time. The actual booking date at Orange County Jail, and the timing of any subsequent Seminole County Jail admission, must be established from original booking records rather than inferred from the later federal docket.

The disclosed arrest warrant, USAO_GARDINER_000001, identifies SDNY No. 26 MAG 1865, Magistrate Judge Sarah Netburn, and a May 14, 2026 date on the form. The sole arrest warrant produced in discovery has an entirely blank section captioned "Return." It identifies no date or location of execution and contains no arresting officer's signature or identifying information in that section. Accordingly, the defense does not represent that this copy proves when the warrant was actually signed or executed. The Middle District of Florida docket, No. 6:26-mj-01583-NWH, expressly records an arrest pursuant to Rule 5(c)(2) on May 15 (ECF No. 1), an in-person initial appearance before Magistrate Judge Nathan W. Hill that day (ECF No. 4), and temporary detention entered that day (ECF No. 12). On May 19, the court entered an order of detention pending further proceedings and a commitment and removal order (ECF Nos. 17–19). The docket does not itself explain the legal authority for detention from May 12 until the judicial proceedings.

Significantly, the Government has not produced an executed arrest warrant or return establishing when, where, by whom, or under what asserted authority the May 14 warrant was executed. The defense has received only the warrant form bearing a May 14 date; the entire "Return" section is blank in the version produced, including the date,

location, and arresting-officer fields. Under Fed. R. Crim. P. 4(c)(4)(A), after executing an arrest warrant, the officer must return it to the judge before whom the defendant is brought under Rule 5. The absence of an executed return in the discovery produced to the defense is not itself proof that no return exists or that the arrest was unconstitutional. It does, however, leave unresolved a material factual question that cannot be answered by Coleman's May 16 account, particularly where the Middle District of Florida docket records Gardiner's arrest and initial appearance on May 15 and the defense alleges continuous restraint since May 12. *See United States v. Gardiner*, No. 6:26-mj-01583-NWH (M.D. Fla. May 15, 2026), ECF Nos. 1, 4; Fed. R. Crim. P. 4(c)(4)(A).

The defense accordingly requests that the Government produce the signed original or electronically issued arrest warrant, all warrant-execution and return records (including any electronically filed or sealed return), the executing officer's identity and contemporaneous reports, any warrantless-arrest probable-cause determination, and the custody and property logs beginning May 12. If the Government contends Gardiner was not under criminal arrest until May 15 or May 16, it should identify the statutory or other lawful basis for his continued involuntary confinement after hospital discharge and explain when the seized items first entered law-enforcement custody. These records bear both on the credibility and materiality of Coleman's chronology under Franks and on the separate Fourth Amendment suppression claims.

The Fourth Amendment generally requires a prompt judicial probable-cause determination following a warrantless criminal arrest; a determination within 48 hours ordinarily satisfies the timing requirement, whereas a longer delay places the burden on the Government to demonstrate a bona fide emergency or other extraordinary circumstance.

*Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). The defense seeks an evidentiary determination of when Gardiner's custodial restraint became a criminal arrest and whether immigration, border, or medical authority was actually invoked. The defense does not contend that the mere absence of a complaint on May 12 automatically made any warrantless arrest unlawful.

**E. Suppression requires a causal connection to the challenged seizure or search.**

Evidence acquired as a direct product of unconstitutional detention or an unlawful search may be excluded, subject to attenuation, independent source, inevitable discovery, and other applicable limitations. *See Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963); *Brown v. Illinois*, 422 U.S. 590, 602–04 (1975); *Murray v. United States*, 487 U.S. 533, 537–42 (1988). The defense requests suppression of any prewarrant device content, notebook contents, and derivative evidence actually obtained by exploitation of an unlawful detention or search, as well as evidence recovered under a warrant invalidated after a corrected-affidavit analysis. The defense recognizes that an unlawful detention alone does not automatically invalidate an otherwise independently supported warrant.

## VI. THE FRANKS SHOWING AND THE REQUESTED EVIDENTIARY HEARING

To obtain a Franks hearing, Gardiner must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or omitted material facts and that the challenged inaccuracies or omissions were necessary to the probable-cause finding. *Franks*, 438 U.S. at 155–56, 171–72; *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000); *United States v. Rajaratnam*, 719 F.3d 139, 146–47, 153–54 (2d Cir. 2013). An omission is not actionable

merely because it would have been helpful to the defense; materiality requires consideration of the affidavit with misleading statements corrected and omitted facts supplied.

The proposed corrected account would identify (1) May 12 as the date of rescue and alleged initial governmental seizure of the bag, phones, and notebook; (2) the warrant form dated May 14, with its entire "Return" section left blank in the only copy produced; (3) the May 15 arrest entry and initial appearance in the MDFL docket; (4) the competing May 14 and May 16 arrest references in Coleman's affidavit; (5) the distinct sources and packaging of the currency, including the bank-withdrawal documentation and the limited politician-labeled envelope; (6) the Bahamian election-day context, insofar as supported by admissible evidence; and (7) the circumstances of any prewarrant examination of the notebook or devices. The defense asks the Court to evaluate the entire corrected affidavit, including all incriminating historical allegations, rather than to excise those allegations without justification.

The defense seeks testimony from Coleman and relevant CBP, rescue, custodial, and evidence-handling personnel, together with the original May 14 arrest warrant and return, the May 15 Rule 5 appearance record, dispatch and transfer records, hospital discharge and guard logs, Port Canaveral holding-cell records, Orange and Seminole County Jail booking and transport records, CBP custody and property records, and complete chain-of-custody and prewarrant access logs. The defense further requests the opportunity to supplement this motion when those records are authenticated.

## VII. RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that the Court (1) conduct a hearing under Franks and, separately, an evidentiary suppression hearing as necessary; (2) direct production or preservation of the specifically identified custody, warrant, booking, and property records; (3) determine the legality of the May 12 seizure and continued detention and the scope of any prewarrant notebook or device examination; (4) reconstruct the affidavit with proven false statements corrected and material omissions included; (5) suppress evidence obtained through any unconstitutional search or seizure, including fruits shown to be causally connected, or alternatively grant appropriate tailored relief; and (6) grant such other relief as is just and proper. Defendant additionally requests production of the executed arrest warrant and Rule 4(c)(4)(A) return, or a sworn explanation of their absence, and an opportunity to supplement the suppression record after their production.

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy has been electronically filed with the Clerk of the Court utilizing the CM/ECF system on this 16th day of October 2026.

Respectfully submitted,

**SUSY RIBERO-AYALA, P.A.**
121 Alhambra Plaza
Suite 1500
Coral Gables, Florida 33134
Telephone: (305) 854-4711
Facsimile: (305) 489-8101

By: /s/ *Susy Ribero-Ayala*
Susy Ribero-Ayala, Esquire
Florida Bar No. 993352
Sra@ralawmiami.com
*Attorney for Jonathan Eric Gardine*