UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONATHAN ERIC GARDINER,
a/k/a "Player,"

Defendant.

S2 24 Cr. 655 (LJL)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JONATHAN ERIC GARDINER'S PRETRIAL MOTIONS

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Jonathan L. Bodansky
Juliana N. Murray
Assistant United States Attorneys
*Of Counsel*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

I. Summary of Facts .......... 2

II. Procedural History .......... 4

III. The Government's Discovery Productions .......... 5

ARGUMENT .......... 6

I. The Defendant Is Not Entitled to a Bill of Particulars .......... 6

A. Applicable Law .......... 7

B. Discussion .......... 9

II. The Defendant's Purported Motion to Compel Should Be Denied .......... 13

III. The Defendant's Motion to Disclose the Legal Basis for Continued Retention of Seized Currency Should Be Denied .......... 15

IV. The Defendant's Conditional Motion for a *Monsanto* Hearing Should Be Denied .......... 16

V. The Defendant's Motion to Suppress Evidence from his Cellphones and Notebook Should Be Denied .......... 18

A. Relevant Factual Background .......... 18

B. Applicable Law .......... 20

1. Probable Cause .......... 20

2. Alleged Omissions or Misstatements in a Search Warrant Affidavit .......... 21

C. Discussion .......... 24

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
373 U.S. 83 (1963) .......... 14

*Caplin & Drysdale, Chartered v. United States*,
491 U.S. 617 (1989) .......... 18

*Culley v. Marshall*,
601 U.S. 377 (2024) .......... 17

*D.C. v. Wesby*,
138 S. Ct. 577 (2018) .......... 21

*Ferreira v. United States*,
354 F. Supp. 2d 406 (S.D.N.Y. 2005) .......... 16

*Franks v. Delaware*,
438 U.S. 154 (1978) .......... 20, 22

*Illinois v. Gates*,
462 U.S. 213 (1983) .......... 20, 21

*Gerstein v. Pugh*,
420 U.S. 103 (1975) .......... 21

*Giglio v. United States*,
405 U.S. 150 (1972) .......... 14

*Hill v. United States*,
296 F.R.D. 411 (E.D. Va. 2013) .......... 16

*Luis v. United States*,
578 U.S. 5 (2016) .......... 17

*Panetta v. Crowley*,
460 F.3d 388 (2d Cir. 2006) .......... 22

*Rivera v. United States*,
928 F.2d 592 (2d Cir. 1991) .......... 21, 22

*Texas v. Brown*,
460 U.S. 730 (1983) .......... 21

*United States v. $8,850*,
461 U.S. 555 (1983) .......... 17

*United States v. Almaleh*,
No. 17 Cr. 25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022) .......... 8, 11, 12, 20

*United States v. Awadallah*,
349 F.3d 42 (2d Cir. 2003) .......... 21, 22, 23

*United States v. Bonventre*,
720 F.3d 126 (2d Cir. 2013) .......... 17

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) .......... 10

*United States v. Calk*,
No. 19 Cr. 366 (LGS), 2020 WL 3577903 (S.D.N.Y. Jul. 1, 2020) .......... 22, 23

*United States v. Canfield*,
212 F.3d 713 (2d Cir. 2000) .......... 23, 24

*United States v. Cardona*,
897 F. Supp. 802 (S.D.N.Y. 1995) .......... 16

*United States v. Cephas*,
937 F.2d 816 (2d Cir. 1991) .......... 7

*United States v. Chen*,
378 F.3d 151 (2d Cir. 2004) .......... 7

*United States v. Cohen*,
518 F.2d 727 (2d Cir. 1975) .......... 10, 12

*United States v. Cromitie*,
No. 09 Cr. 558 (CM), 2010 WL 3025670 (S.D.N.Y. July 28, 2010) .......... 23

*United States v. Falso*,
544 F.3d 110 (2d Cir. 2008) .......... 22, 24

*United States v. Fama*,
758 F.2d 834 (2d Cir. 1985) .......... 21

*United States v. Feola*,
651 F. Supp. 1068 (S.D.N.Y. 1987) .......... 9

*United States v. Gottlieb*,
493 F.2d 987 (2d Cir. 1974) .......... 7

*United States v. Helbrans*,
No. 19 Cr. 497 (NSR), 2021 WL 2873800 (S.D.N.Y. July 8, 2021)........................................ 9

*United States v. King*,
No. 21 Cr. 255 (NSR), 2022 WL 875383 (S.D.N.Y. Mar. 24, 2022)..................................... 16

*United States v. Klump*,
536 F.3d 113 (2d Cir. 2008)................................................................................................ 20

*United States v. Lahey*,
967 F. Supp. 2d 698 (S.D.N.Y. 2013).................................................................................. 24

*United States v. Leonelli*,
428 F. Supp. 880 (S.D.N.Y. 1977) .................................................................................. 7, 8

*United States v. Ma*,
No. 03 Cr. 734 (DAB), 2006 WL 708559 (S.D.N.Y. Mar. 21, 2006) ....................................... 9

*United States v. Mahabub*,
No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ...................................... 7

*United States v. Maisonet*,
No. 12 Cr. 829 (AKH), 2013 WL 12204909 (S.D.N.Y. Mar. 22, 2013)................................. 22

*United States v. Mandell*,
710 F. Supp. 2d 368 (S.D.N.Y. 2010)............................................................................ 22, 23

*United States v. Melendez*,
No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016) ....................................... 22

*United States v. Mitlof*,
165 F. Supp. 2d 558 (S.D.N.Y. 2001).................................................................................... 8

*United States v. Monsanto*,
491 U.S. 600 (1989)............................................................................................................ 18

*United States v. Monsanto*,
924 F.2d 1186 (2d Cir. 1991)............................................................................................... 17

*United States v. Muyet*,
945 F. Supp. 586 (S.D.N.Y. 1996) ............................................................................. 7, 8, 12

*United States v. Noel*,
No.19 CR. 830-2 (AT), 2020 WL 12834537 (S.D.N.Y. June 9, 2020)................................... 15

*United States v. Ojeikere*,
299 F. Supp. 2d 254 (S.D.N.Y. 2004).................................................................................... 8

*United States v. Perez*,
247 F. Supp. 2d 459 (S.D.N.Y. 2003)........................................................................ 23

*United States v. Pinto-Thomaz*,
352 F. Supp. 3d 287 (S.D.N.Y. 2018)........................................................................ 16

*United States v. Rajaratnam*,
719 F.3d 139 (2d Cir. 2013)........................................................................ 23, 25, 26

*United States v. Reilly*,
76 F.3d 1271 (2d Cir. 1996)........................................................................ 23

*United States v. Rigas*,
258 F. Supp. 2d 299 (S.D.N.Y. 2003)........................................................................ 14

*United States v. Rivera*,
750 F. Supp. 614 (S.D.N.Y. 1990) ........................................................................ 22

*United States v. Salazar*,
485 F.2d 1272 (2d Cir. 1973)........................................................................ 7

*United States v. Sandalo*,
70 F.4th 77 (2d Cir. 2023) ........................................................................ 22

*United States v. Santiago*,
174 F. Supp. 2d 16 (S.D.N.Y. 2001)........................................................................ 8

*United States v. Silva*,
146 F.4th 183 (2d Cir. 2025) ........................................................................ 26, 27

*United States v. Silver*,
No. 15 Cr. 93 (VEC), 2015 WL 1501619 (S.D.N.Y. Mar. 31, 2015)........................................ 18

*United States v. Singh*,
390 F.3d 168 (2d Cir. 2004)........................................................................ 21

*United States v. Skyfield*,
No. 23 Cr. 569 (LJL), 2023 WL 8879291 (S.D.N.Y. Dec. 22, 2023) ........................................ 22

*United States v. Torres*,
901 F.2d 205 (2d Cir. 1990)........................................................................ 11

*United States v. Triana-Mateus*,
No. 98 Cr.  (SWK), 2002 WL 562649 (S.D.N.Y. Apr. 15, 2002) ........................................ 7

*United States v. Trippe*,
171 F. Supp. 2d 230 (S.D.N.Y. 2001)........................................................................ 7

*United States v. Vanhorn*,
296 F.3d 713 (8th Cir. 2002) .......... 16

*United States v. Vilar*,
No. 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) .......... 22

*United States v. Von Neumann*,
474 U.S. 242 (1986) .......... 17

*United States v. Wagner*,
989 F.2d 69 (2d Cir. 1993) .......... 20

*United States v. Walsh*,
194 F.3d 37 (2d Cir. 1999) .......... 7

*United States v. Zemlyansky*,
945 F. Supp. 2d 438 (S.D.N.Y. 2013) .......... 7

**Statutes**

18 U.S.C. § 982 .......... 18

18 U.S.C. § 1345 .......... 17

21 U.S.C. § 853 .......... 16, 17, 18

**Rules**

Fed. R. Crim. P. 7(f) .......... 6

Fed. R. Crim. P. 41(g) .......... 16

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the pretrial motions filed by defendant Jonathan Eric Gardiner, a/k/a "Player," in the above-captioned case. For the reasons set forth herein, the defendant's motions should be denied in their entirety.

*First*, the defendant's motion for a bill of particulars (Dkt. 141) should be denied.[1] The defendant is not entitled to a bill of particulars where, as here, the charging instruments provide the defendant with adequate notice of the charged crimes and the Government has, through its discovery productions and correspondence with counsel, provided the defendant with details about the Government's proof far exceeding that which is required by law. The Government has no obligation to further catalog its anticipated trial proof for the defendant.

*Second*, the defendant's motion to compel certain materials (Dkt. 142) is procedurally inappropriate at this stage in the case and, in any event, meritless. The Government has already produced the requested materials to the extent they are in the Government's possession and discoverable pursuant to Rule 16 or *Brady*. In addition, the Government will provide any materials that fall within its Section 3500 and *Giglio* obligations to the defense in advance of trial, consistent with its disclosure obligations.

*Third*, the defendant's motion to "direct[] the Government to identify the legal and factual basis for continued retention of seized currency" (Dkt. 143)—specifically, the bulk currency seized

[1] The Government also notes that the defendant's discovery motions (Dkts. 141, 142), do not satisfy the S.D.N.Y. Local Criminal Rule 16.1 affidavit requirement. During a brief phone call on October 15, 2026, the defense did not raise most of the 24 categories of requests outlined in these motions—and certainly not with specificity or detail—such that the parties had the opportunity to meaningfully confer and attempt to reach agreement. To the extent the defendant pursues discovery motions with the Court, the Court should direct counsel to comply with the affidavit requirement in Local Criminal Rule 16.1 and the Court's Individual Practices in Criminal Cases, ¶ 3(b).

from the defendant at the time of his arrest—is moot, because the Government is holding the currency as evidence pending trial and has produced reports documenting the inventorying of that evidence to the defense.

*Fourth*, given the foregoing, the defendant's conditional motion for a *Monsanto* hearing concerning the seized currency (Dkt. 144) is also moot and should be denied. As described above, the currency was inventoried as evidence. In addition, the currency also constitutes assets subject to probable forfeiture pretrial, which is another valid basis for pretrial restraint. The charging instruments include allegations of cash bribes to Bahamian government officials in connection with narcotics trafficking, and the discovery includes evidence that such bribes were paid. The defendant has not met the threshold showing for a *Monsanto* hearing, and the motion should be denied.

*Finally*, the defendant's motions to suppress the contents of his cellphones and the notebook he had at the time of his arrest (Dkt. 145) should be denied without a hearing. The warrant applications were supported by ample probable cause, including, among other things, numerous incriminating communications between and among the defendant's co-conspirators. In support of his motion, the defendant makes unfounded claims that the applications contained material misrepresentations and omissions. But the defendant's allegations do not withstand scrutiny; they are baseless attempts to suppress evidence of the defendant's guilt. The defendant's motions to suppress should therefore be denied without a hearing.

Accordingly, and for the reasons set forth below, the defendant's motions should be denied.

## BACKGROUND

### I. Summary of Facts

Since at least in or about 2022, the Drug Enforcement Administration ("DEA") has been investigating multiple drug trafficking organizations ("DTOs") transporting ton-quantity cocaine

shipments by air and sea from Colombia, Venezuela, Haiti, and the Dominican Republic through The Bahamas and, ultimately, into the United States.

The Bahamas is an archipelago nation of approximately 700 islands, as well as numerous cays and islets. The northernmost Bahamian islands are less than 100 nautical miles from the Florida coast. Many of these islands are small, uninhabited, or sparsely populated. Although The Bahamas has international airports on its northern and most densely populated islands, such as New Providence (where the capital of The Bahamas, Nassau, is located) and Grand Bahama, the country contains multiple, smaller airstrips throughout the southern portions of the island chain that generally do not require flight plans for arriving and departing aircraft. Multiple DTOs have increasingly relied on these remote airstrips to transit drug loads through clandestine flights under the protection of local officials, including high-ranking members of the Royal Bahamas Police Force ("RBPF"). Once the drug loads arrive in The Bahamas, the DTOs work with members of the RBPF and other officials to move their illicit shipments up the island chain to the northernmost islands, where the shipments are transported into the United States by boat.

The defendant played a critical role helping to traffic narcotics through The Bahamas. The defendant oversaw drug pilots and indirectly owned the aircraft they use to fly cocaine into The Bahamas. He controlled a construction business that he used to, among other things, bid on and secure Bahamian government-issued construction contracts worth tens of millions of dollars, leveraging his connections within the Bahamian government to launder his narcotics trafficking proceeds. Additionally, starting at least in or about 2023, members of the DTO in which the defendant participated began to discuss their scheme to traffic narcotics with confidential sources. One of those sources ("CS-2"[2]), while working at the direction of the DEA, posed as a member of

[2] Terms are defined herein consistently with the defined terms in the Complaint and Indictment.

a drug trafficking organization that was purportedly importing ton-quantities of cocaine into the United States for sale and redistribution. (*See* Compl. (26-mj-01865 Dkt. 1) ¶ 13(a)). During the course of the investigation, CS-2 has provided information about the defendant, an international narcotics trafficker who sourced ton-quantities of cocaine from Colombia and elsewhere through The Bahamas, for ultimate distribution in the United States. Among other things, CS-2 identified that the defendant was involved with a particular drug load in or about 2023 in Rum Cay in The Bahamas, during which the plane being used to transport cocaine crashed and the drug pilot died.

On or about May 12, 2026, at approximately 12:05 p.m., a Beechcraft 300 King Air turboprop plane carrying 11 individuals—including the defendant—crashed into waters off the coast of Florida. The U.S. Coast Guard rescued all 11 passengers and transported them to Florida for medical evaluation and treatment. U.S. Customs and Border Patrol ("CBP") determined the defendant was the subject of an ongoing DEA investigation and detained him pursuant to its authorities. CBP also conducted a border search of the defendant and his possessions, including the crossbody bag that was in the defendant's possession, and found three cellphones, a notebook, and bulk currency.

## II. Procedural History

On November 26, 2024, Indictment 24 Cr. 655 (GHW) (the "Indictment") was unsealed in the Southern District of New York, charging 13 individuals who were part of the same DTO as the defendant (the "Charged Co-Conspirators") with federal narcotics and firearms offenses. The charges arose out of their participation in a conspiracy to traffic narcotics through The Bahamas and into the United States with the support and protection of corrupt Bahamian government officials, including politicians and high-ranking members of the RBPF and Royal Bahamas Defence Force ("RBDF"). (*See* Compl. (26-mj-01865 Dkt. 1) ¶ 12; Ind. (Dkt. 3) ¶¶ 20-26).

On May 14, 2026, two days after the defendant's helicopter crashed, the defendant was charged in this District, by criminal complaint 26 Mag. 1865 (the "Complaint"), with cocaine importation conspiracy, in violation of 21 U.S.C. § 963. (*See* Compl. (26-mj-01865 Dkt. 1)). That same day, the defendant was arrested by the DEA in the Southern District of Florida and transferred from CBP custody. The defendant was presented in the Southern District of Florida and, on May 19, 2026, waived an identity and preliminary hearing in the Southern District of Florida and consented to detention pending transfer to this District pursuant to Federal Rule of Criminal Procedure 5(c)(3). (26-mj-01865 Dkt. 3). A grand jury sitting in this District returned a superseding indictment against the defendant on June 16, 2026 (the "S2 Indictment"), charging the defendant with cocaine importation conspiracy, firearms possession, and firearms conspiracy. (Dkt. 113). The defendant was presented before a magistrate judge the following day and was ordered detained on consent without prejudice. (Dkt. 114). During an initial conference before the Hon. Gregory H. Woods on June 25, 2026, the Court heard oral argument on the defendant's application for bail (*see* Dkt. 118), denied that application, and ordered the defendant detained pending trial. (Dkt. 119).

Trial is scheduled to begin on March 1, 2027.

## III. The Government's Discovery Productions

The Government has made substantial discovery productions to the defendant to date. Those productions began in July 2026, when the Government produced, among other things, (i) full extractions or contents of the defendant's three cellphones and certain of the co-defendants' electronic devices and electronic accounts; (ii) lengthy search warrant applications outlining much of the Government's proof, including communications between co-conspirators and DEA confidential sources ("CSs"); (iii) DEA reports, including reports of debriefings of CSs and reports relating to CS meetings and/or communications with the charged defendants, most of which were

audio and/or video recorded; (iv) video and audio recordings of those meetings and communications; (v) communications between co-conspirators about the 2024 narcotics transaction described in the Complaint (*see* Compl. ¶¶ 9-11); (vi) recordings of the defendant's jail calls since his arrest in 2026; and (vii) materials provided by third parties pursuant to grand jury subpoenas and voluntary requests, including communications and transaction records. On November 4, 2026, the Government made an additional production of, among other things: (viii) CBP reports from May 2026, when the defendant was detained by CBP following his release from a hospital in Florida following his medical evaluation; and (ix) records relating to certain aircraft, including aircraft associated with the defendant and narcotics seizures in The Bahamas.

In addition, as described further below, the Government has, on multiple occasions, directed defense counsel to specific discovery materials, including certain recordings or reports relevant to the defendant. On October 15, 2026, the Government proffered to defense counsel (by phone) that its proof at trial would include, but not be limited to, testimony from multiple witnesses about the defendant's involvement in the charged conspiracies.

## **ARGUMENT**

### I. The Defendant Is Not Entitled to a Bill of Particulars

The defendant moves under Rule 7(f) of the Federal Rules of Criminal Procedure for the Court to order the Government to provide a bill of particulars requesting various categories of information. (Dkt. 141). The defendant's requested information is beyond the scope of a bill of particulars; has already been provided in the Indictment (Dkt. 3), and S2 Indictment (Dkt. 113), and in the extensive discovery produced in this case; or will be provided to the defendant at the appropriate time in accordance with the Government's disclosure obligations. Because the defendant is not entitled to a bill of particulars under well-established law, his requests should be denied.

### A. Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars "is to apprise [the] defendant of the essential facts of a crime," *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977), and to otherwise "ensure that a defendant has the information necessary to prepare a defense," *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014). The Second Circuit has "consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms." *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973)). Therefore, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted); *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

A bill of particulars is *not* meant to compel the Government "to turn over all information that would aid the defendant." *Mahabub*, 2014 WL 4243657, at *2; *see United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). Thus, "[t]he Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." *Triana-Mateus*, 2002 WL 562649, at *5; *see also United States v. Zemlyansky*, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013) (same); *United States v. Muyet*, 945 F. Supp. 586, 598-99 (S.D.N.Y. 1996) (same). A bill of particulars also "is not an investigative tool for the defendant," *Leonelli*, 428 F. Supp. at 882, and is not to be used as a mechanism to compel a preview of the Government's evidence prior to trial, *see Triana-Mateus*, 2002 WL 562649, at *5

(citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)). Indeed, the Government is not required to "particularize all of its evidence," *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991), or to provide the defendant with a preview of the Government's case or legal theory, *see Muyet*, 945 F. Supp. at 598-99.

Courts in this District routinely deny motions for bills of particulars that are, at bottom, demands for details of the way the offense was committed or how the Government intends to prove its case at trial and where, as here, the charging instruments and discovery provide the defendant with adequate notice. *See, e.g.*, *United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *9 (S.D.N.Y. Feb. 28, 2022) (denying request for a bill of particulars where "[t]he charging instruments, correspondence between the parties, and discovery advised the defendants of the specific properties at issue and the allegedly fraudulent documentation filed in connection therewith"); *United States v. Ojeikere*, 299 F. Supp. 2d 254, 261 (S.D.N.Y. 2004) (denying bill of particulars request where charging instruments and discovery materials provided "sufficient particularity"); *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying request for bill of particulars identifying "each act of 'fraud, neglect, connivance, misconduct, and violation of law' upon which the Government will base its case," and noting that Government may not be compelled to disclose the manner in which it will prove charges, the manner in which defendant committed the crime charged, or a preview of Government's evidence or legal theories); *Leonelli*, 428 F. Supp. at 882 (rejecting request for bill of particulars regarding the names, dates, and places for the entire case as "an attempt to discover the minutia of the Government's case").

Moreover, particularly "in the context of prosecutions of narcotics conspiracies, courts have consistently refused to grant a bill of particulars requesting the following kinds of information: (1) when the conspiracy was formed; (2) when the defendant joined the conspiracy;

and (3) how the Government alleges the defendant performed acts in furtherance of the conspiracy." *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) (citing cases). Similarly, courts routinely deny motions for a bill of particulars seeking the identities of uncharged co-conspirators. *See, e.g.*, *United States v. Helbrans*, No. 19 Cr. 497 (NSR), 2021 WL 2873800, at *18 (S.D.N.Y. July 8, 2021) (denying defense request for disclosure of identities of co-conspirators "because such information must only be disclosed if and when the Government chooses to call such individuals as witnesses at trial"); *United States v. Ma*, No. 03 Cr. 734 (DAB), 2006 WL 708559, at *14 (S.D.N.Y. Mar. 21, 2006) ("Courts also deny bills of particulars seeking the names and identities of unindicted co-conspirators where sufficient discovery has been provided."); . And "since the Government is not required to charge any overt acts in the indictment, [any information of this kind] is, itself, more detailed than defendants have a right to demand with respect to the overt acts enumerated therein." *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987).

**B. Discussion**

The defendant's motion for a bill of particulars should be denied because he has received ample information that not only provides notice of the charges against him, but also furnishes substantial insight into the Government's case such that he is more than capable of adequately defending against those charges. The defendant's request for a bill of particulars amounts to a demand for a detailed overview of the Government's trial evidence and identification of every anticipated witness and uncharged co-conspirators, all of which is relief that Rule 7(f) does not authorize.[3]

---

[3] In particular, the defendant requests: (1) the approximate date or time period the defendant joined the conspiracy charged in Count One and the relevant act or conduct; (2) identification of charged

(*continued on next page*)

As an initial matter, the 12-page Complaint, the 19-page Indictment filed on November 21, 2024, and the S2 Indictment provide detailed factual allegations that form the basis of the charged conspiracies. The charging documents, as supplemented by the searchable Rule 16 discovery and additional voluntary disclosures made by the Government, provide the defendant with more than enough notice. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (court should consider the text of the Indictment, as well as discovery and other information supplied to the defendant). With respect to conspiracies specifically, "[t]he Government need not . . . set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975).

Here, the Indictment tracks the statutory language of the charged offenses. And the charging instruments in this case do not merely recite the statutory language: they provide substantial detail about the alleged conspiracy spanning from May 2021 to late 2024, including descriptions of co-conspirators (*see, e.g.*, Ind. (Dkt. 3) ¶¶ 7-19), overt acts committed in furtherance of the charged crimes (*see, e.g., id.* ¶ 20(b) ("[O]n or about October 18, 2023, CURTIS and SYMONETTE each accepted an approximately $10,000 cash bribe payment as a down

---

co-defendants with whom the defendant conspired; (3) identification and details about each cocaine shipment, proposed shipment, or discrete narcotics transaction involving the defendant by approximate date, location, and quantity; (4) whether the February 2023 cocaine transaction described in the complaint is included in the conduct charged in Count One, and any of the charged defendants alleged to participate in that transaction; (5) whether the defendant used the alias "Progress," and if so, identify "the account or telephone number" he used "in that capacity"; (6) identification of the communication or meeting where the defendant is referred to as "Player"; (7) details about the September 3, 2024 meeting; (8) identification of the particular drug-trafficking transaction or conduct during and in relation to which the Government alleges the defendant committed or aided and abetted the conduct charged in Count Two; (9) identification and details of the firearm or type of firearm involved; (10) identification of the defendant's alleged co-conspirators for the conduct charged in Count Three; (11) whether the defendant's May 12, 2026 flight or "any conduct by him associated with that flight" is alleged to be in furtherance of the narcotics trafficking conspiracy charged in Count One; and (12) identification of charged co-defendants with whom the defendant conspired. (*See* Dkt. 141 at 4-6).

payment for their assistance in what they understood to be a future 600-kilogram cocaine shipment to The Bahamas through the Nassau Airport, for eventual distribution to the United States")), numerous examples of specific communications that the Government will rely upon to prove its case (*see, e.g.*, Compl. ¶¶ 9-11; Ind. 25)., and the approximate times and locations where the conduct took place (*see, e.g.,* S2 Ind. (Dkt. 113) ¶¶ 1, 3, 6 ("From at least in or about May 2021, up to and including at least in or about May 2026")). Put simply, the Government has already provided the defense with information far exceeding that which is required under Rule 7.

In addition to the allegations in the charging documents, and as described above, *see supra* pp. 5-6, the defendant has received voluminous Rule 16 discovery in this case—including CS recordings and related DEA reports, communications intercepted pursuant to Title III, and the full contents of the defendant's and co-conspirators' electronic devices and accounts—accompanied by cover letters that identify, within each production, the categories of materials produced to the defendant. Thus, the defendant has no basis to argue that, combined with the detailed allegations in the Complaint and the Indictment, he lacks sufficient information to understand the crimes with which he has been charged. Nor does the Government have an obligation to further catalog its proof to aid the defendant in preparing a defense. *See, e.g.*, *Almaleh*, 2022 WL 602069 at *9 ("[I]t is incumbent on the defense to review the discovery for itself to determine its significance; it is not the role of the government to tell the defense everything that is important and why.").

With respect to the defendant's itemized requests as to specific dates, times, and details of drug shipments, conversations, or interactions underlying the allegations (*see* Dkt. 141 at 4-6), such requests are far afield of what Rule 7(f) contemplates. "Acquisition of evidentiary detail is not the function of the bill of particulars." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (internal citation omitted). And the defendant's own motion reveals the overbreadth of these

discovery requests: Citing no case law, the defendant claims he has "deliberately narrowed the requests from the broader information that could be sought in discovery. [He] does not ask the Government to identify *every* overt act, *every* witness, *every* communication, *every* confidential source, or *every* item of proof." (Dkt. 141 at 4). But narrowing an overbroad request to one seeking information to which the defendant is still not entitled does not change the calculus. The Government is under no obligation to respond to specific questions posed by the defendant; it must only supply sufficient notice as is required by law. And critically, where, as here, the Government has charged a conspiracy, it is not required to provide notice of, nor does it need to prove, every act in furtherance of the conspiracy, let alone each substantive violation alleged. *See Cohen*, 518 F.2d at 733; *Muyet*, 945 F. Supp. at 599.

While the charging documents and Rule 16 discovery are more than sufficient here, on multiple occasions, the Government has also specifically responded to the defendant's pointed requests and directed defense counsel to evidence that the Government intends to offer at trial. For example, at defense counsel's request, the Government identified for the defense a particular CS recording and associated DEA report where the charged co-defendant Orozco-Toro referred to the defendant by his alias, "Player," during discussions about a planned cocaine shipment, which is clearly responsive to requests 2 and 12, among others. The Government has also identified for the defense specific electronic discovery connecting the defendant with the iCloud account cited in the Complaint (*see* Compl. n.6), and has identified the cellphone extraction report confirming that same iCloud was associated with one the cellphones seized from the defendant at the time of his arrest. The Government also directed defense counsel to electronic accounts registered to the defendant that were central to the alleged 2024 narcotics transaction, and the Government proffered to defense counsel that its proof at trial will include witness testimony from multiple

witnesses. Nothing more is required. *See, e.g.*, *Almaleh*, 2022 WL 602069 at *9 (denying request for a bill of particulars where "although the indictments do not specify each mailing or wire transmission, the affidavits contain specific examples of incidents when the defendants used the phone, email, or Internet in furtherance of the alleged fraud").

The charging instruments, substantial discovery, and other disclosures by the Government at defense counsel's request plainly provide the defendant with sufficient information to prepare for trial. The Government will also, of course, make additional pretrial disclosures, in the ordinary course, of exhibits and Jencks Act material. Nothing further is required at this time, and the defendant's motion for a bill of particulars should be denied.

## II. The Defendant's Purported Motion to Compel Should Be Denied

The defendant next asks this Court to order a fishing expedition authorizing the search for, and compelled production of, records and information. (Dkt. 142). The Court should reject this request. To the extent discoverable information in the possession of the Government and responsive to these requests is in the possession, custody, or control of the Government, that material has been disclosed. Nothing more is required, and the defendant cannot use this Court to "compel" production of materials that do not exist.

Specifically, the defendant seeks an order compelling twelve categories of evidence. To justify these broad requests, the defendant states only that individually and collectively, these requests "bear[] directly on suppression, impeachment, the Government's account of the May 12 events, and the charged conspiracy." The "motion" makes no attempt to grapple with the discoverability of the material sought in any particular request. That cannot be sufficient. *See United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003) ("It is Defendants' burden to make a prima facie showing that documents sought under [a motion to compel] are material to preparing the defense. To establish a showing of materiality, a defendant must offer more than the

conclusory allegation that the requested evidence is material." (internal citation and quotation marks omitted)).

Many of these requests appear to relate to the defendant's baseless conspiracy theories regarding the May 12, 2026 plane crash. (Dkt. 142 ¶¶ 1-4). For example, the defendant seeks "records showing when DEA, CBP, Coast Guard, military personnel, or any other United States agency first learned Mr. Gardiner was aboard the aircraft." (Dkt. 142 ¶ 3). The defendant does not attempt to justify this request, nor could he. Nothing about the DEA's knowledge of his presence on the plane that crashed sheds light on his guilt or innocence on the charged offenses, nor could it be the basis of a non-frivolous motion. Moreover, with respect to the records of "any other United States agency," that request is little more than a fishing expedition for materials outside the prosecution team's possession and control.

The balance of the requests concern generalized requests for Government information that, to the extent discoverable under Rule 16, the Government has already disclosed. (Dkt. 142 ¶¶ 5-12). For example, one request seeks additional records about the money seized from the defendant, including any photographs (Dkt. 142 ¶ 8), and statements by the DEA CSs (Dkt. 142 ¶ 11). To the extent information falling into these categories is presently discoverable (as opposed to falling under Jenks Act material), that material has been produced. The Government confirms that it is aware of its obligations under Rule 16 as well as those that stem from *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, and will continue the timely discharge of those obligations faithfully. The defendant has not asserted any basis for doubting these representations. Nothing more is required. *See United States v. Noel*, No. 19 CR. 830-2 (AT), 2020 WL 12834537, at *2 (S.D.N.Y. June 9, 2020) ("If the Government represents that it "it has fully complied with its Rule 16 obligations and will continue to do so, the defendant

must put forward some "compelling demonstration to the contrary by pointing to a specific failure by the Government to comply with its disclosure obligations" in order to justify a motion to compel." (internal alterations and quotation marks omitted)).

**III. The Defendant's Motion to Disclose the Legal Basis for Continued Retention of Seized Currency Should Be Denied**

The defendant moves the Court to direct the Government to identify the bases for its retention of the approximately $30,000 bulk Bahamian currency seized from the defendant following his rescue on May 12, 2026, and his subsequent arrest on May 14, 2026. (Dkt. 143 at 1). Here, the Government alleges that Bahamian law enforcement officials accepted cash bribes Bahamian law enforcement in connection with planned cocaine shipments (*see* Compl. ¶ 13(e)), and the bulk currency recovered from the defendant's personal effects on the day of The Bahamas general elections was labeled with the name of a Bahamian politician ("Politician-1")—a politician who had been introduced to a CS in or about November 2024 during a recorded meeting regarding the planned shipment of approximately 900 to 1,000 kilograms of cocaine (*see* Compl. ¶ 13(b)). Contrary to the defendant's assertion (*see* Dkt. 143 at 3-4), the currency unquestionably has evidentiary value, including because at least some of the currency appears to have been earmarked for a Bahamian politician and thus could have been a bribe payment for the purpose of permitting or facilitating the defendant's continued narcotics trafficking. The Government can maintain the currency as evidence for the trial scheduled for March 1, 2027 because, at trial, the Government plans to offer the money to prove the defendant's participation in the charged crime.

It is proper to "den[y] a motion for return of property if the defendant lacks entitlement to 'lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'" *Hill v. United States*, 296 F.R.D. 411, 414 (E.D. Va. 2013), *aff'd*, 567 F. App'x. 202 (4th Cir. 2014) (*citing United States v. Vanhorn*,

296 F.3d 713, 719 (8th Cir. 2002)) (internal quotations and citations omitted). Rule 41(g) permits a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to "move for the property's return." Fed. R. Crim. P. 41(g). "In order to prevail on a Rule 41(g) motion, the moving party 'must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018) (quoting *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)); *see also United States v. King*, No. 21 Cr. 255 (NSR), 2022 WL 875383, at *5 (S.D.N.Y. Mar. 24, 2022). Here, as conveyed to defense counsel on October 15, 2026—and as reflected in DEA reports that the Government produced to the defendant on November 4, 2026—the currency in question has been inventoried as evidence and is being maintained in a DEA evidence vault pending trial. Such records clearly establish: "(1) the identification of the property seized; (2) the date of its seizure; (3) the case name and number to which the property relates; (4) the storage location of the property; and (5) the chain of custody of the property." *United States v. Cardona*, 897 F. Supp. 802, 804 (S.D.N.Y. 1995). This case is "obviously distinguishable" from the cases the defendant relies on. *Id.* Accordingly, the defendant's request that the Court "direct the Government to state whether the currency is held only as evidence, subject to a seizure warrant, administratively forfeited, or retrained under 21 U.S.C. § 853 or another identified authority" should be denied as moot. (*See* Dkt. 144 at 2).

## IV. The Defendant's Conditional Motion for a *Monsanto* Hearing Should Be Denied

The defendant also conditionally moves the Court to grant a hearing pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991) (en banc), and *United States v. Bonventre*, 720 F.3d 126 (2d Cir. 2013), "if the Government contends that currency seized from [the defendant] is restrained as property forfeitable under 21 U.S.C. § 853 or related authority and therefore

unavailable to fund counsel of choice." (Dkt. 144 at 1). Because the currency is being retained as evidence in a pending criminal prosecution, the defendant has no due process right to a separate pretrial hearing to determine whether the Government may continue to possess it. Due process requires only a timely ultimate adjudication, not an interim retention hearing. *See*, *e.g., Culley v. Marshall*, 601 U.S. 377, 387-88 (2024); *United States v. Von Neumann*, 474 U.S. 242, 249-50 (1986); *United States v. $8,850*, 461 U.S. 555, 562-65 (1983). In any event, because the currency is being held as evidence during a pending criminal prosecution for its use as an exhibit at trial, *see supra* pp. 15-16, and because the money would be subject to forfeiture if the defendant were convicted, this motion should be denied as moot.

The defendant further argues that he is entitled to release of the funds if the Government claims a right to restrain the currency merely as substitute assets, summarily citing *Luis v. United States*, 578 U.S. 5 (2016).[4] The Court should reject the defendant's argument out of hand. As described above, the seized currency is evidence in this case. Moreover, while the Sixth Amendment guarantees criminal defendants the right to adequate counsel, it does not guarantee indigent defendants the counsel of their choice in all circumstances, and the Supreme Court has held that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets

---

[4] *Luis* involved a challenge to a pretrial court order, freezing certain assets belonging to a criminal defendant accused of violations of federal health care or banking laws, pursuant to the statutory authority in 18 U.S.C. § 1345. *Luis*, 578 U.S. at 8. As the Court articulated, the question presented there was "[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments." *Id.* at 10. The currency here is not being restrained pursuant to specific statutory authority and, in any event, the defendant has not—and cannot—come close to alleging the facts critical to the holding in *Luis*: that the property in question belonged to the defendant (indeed, the proffered bank receipt reflects a withdrawal from an account for a *business* in which he has disclaimed ownership), and that the currency was "not loot, contraband, or otherwise 'tainted.'" *Id.* at 13-14.

adjudged forfeitable to pay for their defense." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). Where it applies, forfeiture is mandatory, and forfeitable funds may not be released to pay for counsel. *See United States v. Monsanto*, 491 U.S. 600, 606-14 (1989).

Even if the Court were to issue an order of restraint, courts are entitled to restrain assets that are subject to probable forfeiture pretrial. *See* 18 U.S.C. § 982; 21 U.S.C. § 853(e); *see also, e.g.*, *United States v. Silver*, No. 15 Cr. 93 (VEC), 2015 WL 1501619 (S.D.N.Y. Mar. 31, 2015).

## V. The Defendant's Motion to Suppress Evidence from his Cellphones and Notebook Should Be Denied

Finally, the defendant challenges the warrant (the "Warrant") to search his electronic devices and notebook, which were in his possession at the time of his rescue on May 12, 2026 and were initially retained by CBP pursuant its border search authority. For the reasons set forth below, the defendant's attempts to undermine the probable cause showing in the affidavit submitted in support of the Warrant (the "Affidavit" or "Aff."), and his baseless allegations that the Government misled the magistrate judge in its warrant application, should be rejected.

### A. Relevant Factual Background

As noted above, and as set forth in the Affidavit, on May 12, 2026, an aircraft carrying the defendant crashed into waters off the coast of Florida. (Aff. ¶ 11(a)). The U.S. Coast Guard rescued the defendant and his fellow passengers and transported them to Florida for medical evaluation and treatment. (*Id.*). That same day, May 12, 2026, following the defendant's rescue, CBP searched the crossbody bag that was in the defendant's possession pursuant to its border search authority and found three cellphones (the "Cellphones"), a notebook (the "Notebook"), and bulk currency. (*Id.* ¶ 11(b)).

On May 14, 2026, the defendant was charged in this District by criminal complaint with a cocaine importation conspiracy, and a warrant was issued out of this District for the defendant's

arrest.[5] (26-mj-01865 Dkt. 1). The defendant was then arrested in Florida, based on the charges contained in the Complaint, on May 14, 2026, and he was presented in federal court in Florida on May 15, 2026.

On May 29, 2026, Barbara C. Moses, United States Magistrate Judge, Southern District of New York, authorized the Warrant to search the Cellphones and the Notebook. In support of the Warrant, the Government submitted the Affidavit, which was from an experienced Special Agent in the DEA's Special Operations Division, Bilateral Investigations Unit ("SOD-BIU"). The Affidavit attached and incorporated by reference the Complaint and the underlying Indictment in *United States v. Curtis et al.*, 24 Cr. 655 (GHW), which provided extensive information about the defendant's and his co-conspirators' involvement in the charged conspiracies.

The Affidavit further explained, among other things, that: the defendant was an international supplier of cocaine for a Georgia-based drug trafficking organization, which was the subject of a June 4, 2024 indictment returned by a grand jury in the Northern District of Georgia (Aff. ¶ 10(b), (c)); starting at least in or about 2023, the defendant and his co-conspirators engaged in electronic, telephonic, and in-person communications with each other and multiple confidential sources, many of which were recorded, concerning their drug trafficking activities (*id.* ¶ 10(e), (f)); during one particular video-recorded meeting, another charged defendant in this case explained to a confidential source, in discussing the details of a large drug shipment, that he was in direct communication with the defendant (*id.* ¶ 10(g)); a confidential source reported that the defendant typically carries and uses multiple phones and owns a business that the defendant uses

[5] The Affidavit mistakenly stated that the defendant was criminally charged on May 16, 2026 (*see* Aff. ¶ 8) rather than May 14, 2026. However, the Warrant application attached and incorporated by reference the Complaint itself, which reflected on its face that it was signed on May 14, 2026. In any event, as discussed further below, that slight variance in dates in no way undermined the probable cause articulated in the Affidavit.

to launder his narcotics trafficking proceeds (*id.* ¶ 10(h)); the defendant's co-conspirators had introduced a purported drug trafficker to Politician-1, and when the defendant was rescued on May 12, 2026, he was in possession of an envelope of cash with Politician-1's name written on the outside (*id.* ¶¶ 10(i), 11(b), 12); and on numerous occasions, the defendant's charged co-conspirators claimed access to, and protection and support from, Bahamian politicians and government officials (*id.* ¶ 10(d), 10(f), 10(i), 11(c), 12). The Affidavit further explained that, based on the affiant's training and experience, individuals involved in narcotics trafficking often maintain records or ledgers of their narcotics proceeds, and often use cellphones to discuss, plan, and carry out narcotics transactions—particularly where, as here, the drug trafficking organization included individuals in multiple locations who would have needed to (and did) communicate by phone. (*Id.* ¶¶ 5, 11(d), 14).

## B. Applicable Law

### 1. Probable Cause

A search warrant affidavit is presumed reliable. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). The task of the reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Almaleh*, 2022 WL 602069, at *11 (quoting *Illinois v. Gates*, 462 U.S. 213, 214 (1983)). Moreover, "[a] reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." *Id.* (quoting *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)). In considering a request for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Such determinations must be approached in a practical way, *id.* at 231-32, because "probable cause is a flexible, common-

sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted). It "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Probable cause requires "only the probability, and not a prima facie showing, of criminal activity." *Gates*, 462 U.S. at 235 (internal quotation marks omitted). Moreover, "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). Put simply, "[p]robable cause is not a high bar." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018).

**2. Alleged Omissions or Misstatements in a Search Warrant Affidavit**

In certain circumstances, "a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See id.*

"The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). Indeed, to secure a *Franks* hearing, a defendant must make a "'*substantial preliminary showing*' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks*, 438 U.S. at 155, 170) (emphasis added). Because the burden to obtain a *Franks* hearing is itself a heavy one, such hearings are rare. *See, e.g.*, *United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023) ("[T]he substantial preliminary showing standard imposes a 'high' burden on [the defendant].") (quoting

*Rivera*, 928 F.2d at 604)); *United States v. Skyfield*, No. 23 Cr. 569 (LJL), 2023 WL 8879291, at *8 (S.D.N.Y. Dec. 22, 2023) (defendant's burden is "'a heavy one that requires more than a mere conclusory showing'" (quoting *Sandalo*, 70 F.4th at 86)); *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016) ("The burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare.").

In reviewing a challenge to a warrant, alleged "[o]missions are not subject to the same high level of scrutiny as misstatements." *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990). Because "all storytelling involves an element of selectivity," it is "not shocking that every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007) (internal quotation marks and citations omitted); *see also Awadallah*, 349 F.3d at 67. "[A]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Mandell*, 710 F. Supp. 2d 368, 373 (S.D.N.Y. 2010) (quoting *Awadallah*, 349 F.3d at 67-68).

As a result, the law recognizes that while "an officer may not disregard plainly exculpatory evidence," *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006), an affiant is "not required to include all potentially exculpatory information" in seeking the search warrant, *United States v. Maisonet*, No. 12 Cr. 829 (AKH), 2013 WL 12204909, at *1 (S.D.N.Y. Mar. 22, 2013); *see also United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 3577903, at *5 (S.D.N.Y. Jul. 1, 2020) (quoting *id.*). Indeed, "[a] requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process and place an extraordinary burden on law enforcement officers, and is not the law." *United States v. Cromitie*, No. 09 Cr. 558 (CM), 2010 WL 3025670, at *6 (S.D.N.Y. July 28, 2010) (internal quotation marks omitted). Accordingly,

"[o]mitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing." *Mandell*, 710 F. Supp. 2d at 374 (internal quotation marks omitted).

To permit the inference that an affiant acted with reckless disregard for the truth, the omitted information must be "clearly critical" to assessing the legality of the search. *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (internal quotation marks omitted). The movant must make a substantial preliminary showing that a reasonable person would have known that the magistrate judge would have wanted to know the kind of information that was omitted. *See United States v. Perez*, 247 F. Supp. 2d 459, 474 (S.D.N.Y. 2003). "Courts have repeatedly been warned not to interpret the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Canfield*, 212 F.3d 713, 719 (2d Cir. 2000) (internal quotation marks and alteration omitted).

Importantly, a search warrant affiant "does not necessarily act with 'reckless disregard for the truth' simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be 'clearly critical.'" *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013). "Rather, the reviewing court must be presented with credible and probative evidence that the omission of information . . . was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Id.* (quoting *Awadallah*, 349 F.3d at 68). Moreover, "[t]o prove reckless disregard for the truth, the defendant[] [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Rajaratnam*, 719 F.3d at 154 (internal quotation marks omitted); *see also Falso*, 544 F.3d at 126 ("Allegations of negligence or innocent mistake are insufficient." (internal quotation marks omitted)).

Finally, "[t]o determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes

probable cause." *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Canfield*, 212 F.3d at 718. In other words, "[t]he ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.* (internal quotation marks omitted).

**C. Discussion**

The defendant's motion asserts a number of disjointed and overlapping arguments, none of which have merit.

*First*, the defendant argues that the Affidavit incorrectly stated that all $30,000 of the recovered currency was labeled with the name of Politician-1, when, according to the defendant, only $5,000 was labeled with the name of Politician-1. (Dkt. 145 at 2-4). As an initial matter, the defendant has failed to make a preliminary showing that any purported misrepresentation regarding the currency was deliberate on the part of the affiant. But, in any event, the dollar amount does not alter the probable cause determination; the salient point is that the defendant was found in possession of bulk currency—whether it be $5,000 or $30,000—stashed in an envelope bearing the name of a politician who had been introduced to a confidential source to discuss a planned shipment of cocaine, in an investigation in which multiple co-conspirators had accepted cash payments from purported drug traffickers and discussed their illicit arrangements with Bahamian politicians and government officials.

The defendant further argues that the Affidavit failed to note that the remainder of the bulk currency—that is, the $25,000 that, according to the defendant, was not labeled with the name of Politician-1—was purportedly withdrawn from the defendant's bank account the day before the plane crash, and that the crash itself occurred on the day of the Bahamian elections. (Dkt. 145 at

2-4). As above, the defendant has failed to present any "credible and probative evidence" that these purported omissions were "designed to mislead" or "made with reckless disregard of whether [they] would mislead," *Rajaratnam*, 719 F.3d at 154. In any event, as above, neither purported omission is material. Even if the funds had been withdrawn from the defendant's bank account, that would not undermine probable cause to believe that those funds were connected to the defendant's criminal activities; indeed, the Affidavit specifically described that the defendant used his business to launder his drug trafficking proceeds. Furthermore, the fact that the cash was being delivered to Politician-1 on the day of his reelection does not make it any less likely to have been a bribe; indeed, its timing on the day of the election, as opposed to during the preceding campaign, in fact supports, rather than undercuts, the Government's theory.

*Second*, the defendant argues that the Affidavit misstates and is unclear as to when the Cellphones and Notebook were seized and when the defendant was arrested. (Dkt. 145 at 4-6). As explained above, the Affidavit inadvertently misstates the date of the Complaint and the defendant's arrest as May 16, 2026, as opposed to May 14, 2026. This was a scrivener's error but also immaterial, as the Affidavit attached and incorporated by reference the Complaint itself, which reflected that it was signed on May 14, 2026. The Affidavit also made clear elsewhere, repeatedly, that the defendant's arrest took place on May 14, 2026. (*See, e.g.*, Compl. ¶ 3). Accordingly, the Affidavit and the record as a whole set forth a clear chronology: the defendant was rescued by the U.S. Coast Guard on May 12, 2026, and his Cellphones and Notebook were taken by CBP at that time pursuant to their border search authorities; the defendant was then charged criminally and arrested on May 14, 2026, at which time his Cellphones and Notebook

were seized as evidence in this criminal case; and on May 29, 2026, the Warrant was authorized. No further inquiry is required.[6]

The defendant also notes that the Affidavit stated that officers who inventoried the Notebook, which was waterlogged, opened the cover in an effort to dry it out and observed what appeared to be notations regarding payments. (Dkt. 145 at 5-6; *see also* Complaint. ¶ 11(d) n.5). The defendant argues that this admission in the Affidavit warrants additional inquiry, but as the defendant acknowledges, "an officer may take reasonable steps to preserve wet property." (Dkt. 145 at 5). The officers did nothing more than what is described in the Affidavit and was permitted—*i.e.*, opening the cover of the Notebook in order to prevent water damage—and the defendant provides no basis to suspect otherwise or to conduct additional inquiry on this subject.

*Third*, the defendant argues that the Affidavit "failed to connect any identified device to the historical communications," and thus purportedly failed to establish probable cause to search the devices seized from the defendant. (Dkt. 145 at 8-10). As the defendant acknowledges, however, Second Circuit case law "rejects a rigid requirement of proof that each device was used in the offense," and the Government "need not show that a device was itself used to commit the offense," but rather need only "establish a fair probability that the device contains evidence of the crime." (*Id.* at 10 (citing *United States v. Silva*, 146 F.4th 183 (2d Cir. 2025))). That is precisely what the Affidavit established. While it did not provide direct evidence tying the defendant's prior communications to the Cellphones themselves, the Affidavit provided ample probable cause to

[6] The defendant also argues that "[t]he Government must separately identify the legal authority for restraining [the defendant] from May 12 until the criminal complaint and any subsequent judicial probable cause determination." (Dkt. 145 at 7). In the same paragraph, however, he acknowledges that "[o]rdinarily a determination within 48 hours satisfies the promptness requirement." (*Id.*). Here, that is precisely the timeline that occurred—the defendant was charged and arrested on May 14, 2026, two days after he was first encountered by CBP. Again, no further inquiry is required.

believe that the defendant and his co-conspirators had engaged in extensive electronic communications, including by phone, in connection with their criminal activity, and that the defendant's electronic devices, including the Cellphones, would contain evidence of such criminal activity. That is all that was required, as the defendant himself acknowledges. (*See Silva*, 146 F.4th at 190; Mot. 10).[7]

Accordingly, the defendant's motion to suppress the contents of the Cellphones and the Notebook, obtained pursuant to the Warrant, should be denied without a hearing.

**CONCLUSION**

For the reasons set forth above, the Court should deny the defendant's motions in their entirety.

Dated: New York, New York
November 6, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: /s/
Jonathan L. Bodansky
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2385 / -2314

[7] The defendant also argues that the Affidavit "combined unverified source assertions with a misleading contemporary nexus" (Dkt. 145 at 10-12), and he asserts a series of "independent grounds" for suppression, related to the defendant's "initial seizure," the Government's "prewarrant searches," and "the May 29 Warrant" (*id.* at 12-16). These arguments merely regurgitate points already made elsewhere in the defendant's brief, and they fail again for the reasons articulated above.