**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

Plaintiff,

v. Case No.: S2 24 Cr. 655 (LJL)

JONATHAN ERIC GARDINER,

Defendant.

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF PRETRIAL MOTIONS (ECF NOS. 141–145)**

## PRELIMINARY STATEMENT

The Defendant, JONATHAN ERIC GARDINER, by and through undersigned counsel, files this Reply to the Government's opposition (ECF No. 150, "Opp.") to his motions, ECF Nos. 141–145. The Government contends that its disclosures resolve the issues raised. The record, however, leaves specific questions unanswered. Discovery produced November 4 and November 11, after the motions were filed, makes those questions more concrete—not moot.

Most notably, the Government maintains that the original currency must remain in its possession as trial evidence, yet its November 11 report describes three unsuccessful attempts to exchange that currency. The same report gives inconsistent accounts of the currency's transfer. The Government's narcotics characterization rests on disputed inferences about the election-day cash and the documented B$20,000 withdrawal. The new records require clarification of the detention, continued property retention, and prewarrant examination. The documented link among the 6984 number, the Andrew Rosebud iCloud account, and the iPhone 12 Pro does not

resolve those separate issues or identify the conduct underlying the firearms charges. This reply seeks focused relief on those unresolved matters.

## I. THE GOVERNMENT'S OWN CURRENCY REPORT LEAVES MATERIAL QUESTIONS UNANSWERED

### A. The attempted exchanges require an explanation of the need to retain every original note.

The Government first asserts that the currency is evidence intended for trial and is being maintained in a DEA vault. Opp. 15–17. Its November 11 production, however, describes three attempts to convert the Bahamian currency into U.S. currency: at Loomis on May 28, at Bank of America on June 8, and at an airport currency-conversion center on June 24. The last attempt reportedly failed because the currency was wet and moldy. Suppl. Decl. Ex. A, USAO_GARDINER_000556–000557, Details ¶¶ 6–9 and Custody of Evidence ¶ 1.

If the original notes must be preserved as evidence, the Government should explain why agents repeatedly sought to exchange them. Those attempts call for identification of what the Government needs to preserve: the amount, denominations, serial numbers, condition of the notes, or particular packaging. It should also explain whether photographs and records have preserved those characteristics and whether retaining the identified envelope and appropriate exemplars would satisfy its evidentiary need.

The Government's evidentiary-retention cases require attention to the actual need for the property. *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311–13 (S.D.N.Y. 2018) (recognizing that return may be appropriate if the Government's interests can be protected), involved an encrypted iPhone that agents could neither access nor image. *United States v. King*, No. 21 Cr. 255 (NSR), 2022 WL 875383, at *5 (S.D.N.Y. Mar. 24, 2022), involved no factual basis for finding that the continuing evidentiary need had ended. Here, three attempted exchanges supply a specific reason to examine what must be preserved and whether photographs,

packaging, and identified exemplars would suffice. The general retention grounds stated in *Hill v. United States*, 296 F.R.D. 411, 414–15 (E.D. Va. 2013), and *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002), do not resolve that factual question. *Ferreira v. United States*, 354 F. Supp. 2d 406, 410–11 (S.D.N.Y. 2005), found mootness as to property actually returned and rejected claims to other property outside the movant's interest. The currency here remains held, and the requested explanation remains material.

The custody history is equally unsettled. Details ¶ 5 states that Exhibits N-137 through N-144, including the currency designated N-137, were shipped to Coleman in Virginia on May 15. The same report places N-137 in Orlando storage during the later exchange attempts and describes its physical turnover to Coleman and another agent on July 2. USAO_GARDINER_000556–000557. Further, the report bears a May 22 preparation date, November 8 and 9 signatures, and a narrative extending into July. USAO_GARDINER_000555–000557. The shipping manifest, transfer records, and identification of the operative report are needed to establish where the currency was held, when it moved, and which account is accurate.

The Government's own authority reinforces the need for a reliable accounting. *See United States v. Cardona*, 897 F. Supp. 802, 804–05 (S.D.N.Y. 1995) (resolving a post-prosecution return request on a clear, current documentary accounting of the property's identity, seizure, storage, and chain of custody). Here, the November report's May 15 shipment account and July 2 physical-turnover account require reconciliation. Identification of the existing transfer records and an explanation of those entries would supply the documented accounting on which *Cardona* relied.

These requests were already before the Court. ECF No. 143 sought the inventory, allocation of the original packaging, custody records, and an explanation of the need to retain the

original notes. ECF No. 143 at 2–5. The Government's statement that the money is evidence answers only part of that motion. It does not resolve the remaining requests or the possibility of return subject to preservation conditions. The November 11 production supplies additional support for that relief. A short Government response to the new report would permit consideration of the developed record.

**B. The Government should identify each ground on which it continues to hold the funds.**

The Government should identify the legal and factual basis for continuing to hold the funds. It invokes evidentiary retention and probable forfeitability while stating that no specific statutory restraint is in place. Opp. 2, 16–18 & n.4. See *United States v. Cosme*, 796 F.3d 226, 235–36 (2d Cir. 2015) (holding that an initial exigency did not justify indefinite warrantless retention of seized accounts). The continued seizure requires justification for the period during which it continues. Here, the Government should explain how its asserted basis supports retaining every original note despite the attempted exchanges, the separate packaging, and the bank record.

The civil-forfeiture timing cases address a different issue. *Culley v. Marshall*, 601 U.S. 377, 386–88 (2024), rejected a categorical right to an additional preliminary retention hearing; *United States v. $8,850*, 461 U.S. 555, 562–65 (1983), addressed delay in commencing forfeiture; and *United States v. Von Neumann*, 474 U.S. 242, 249–51 (1986), addressed discretionary remission. Those decisions do not resolve the requests for existing inventory and transfer records, reconciliation of the custody account, and an explanation of the need for every original note. Consistent with his opening motion, Mr. Gardiner reserves any application for return under Rule 41(g) to the district of seizure.

The Government argues that carrying the cash on election day, rather than during the preceding campaign, supports its bribe theory. Opp. 25. That inference overlooks the political activity occurring on election day itself. At the June 25 hearing, counsel explained that Mr. Gardiner was traveling among Bahamian islands with voters or campaign workers on May 12, Election Day, and offered cash campaign contributions and expenses as an innocent explanation for the currency. June 25 Hr'g Tr. 10:21–24, 12:3–16. Mr. Gardiner disputes that any portion of the seized currency—including the approximately B$5,000 in the politician-labeled envelope—was narcotics proceeds or a drug-related bribe. The politician's name and the timing must be evaluated with the defense's explanation and the actual packaging. Neither establishes by itself that the labeled envelope contained a narcotics payment.

The contemporaneous bank record further supports the defense's account. The Bank of The Bahamas receipt attached to ECF No. 143 documents Mr. Gardiner's withdrawal of B$20,000 from the Top Notch Builders Limited account on May 11, 2026, the day before the flight. The Government acknowledged receiving that evidence at the June 25 hearing. ECF No. 143 at 1 & Exs. A–B; June 25 Hr'g Tr. 16:21–23. The Government's observation about ownership of the business does not negate the documented withdrawal or establish that those funds were narcotics proceeds. Opp. 17 n.4.

**C. The conditional asset-restraint request should be preserved.**

The Government states that it is holding the currency as evidence and that no specific statutory restraint is in place. Opp. 17 & n.4. The Court should adjudicate that asserted basis for continued retention and preserve ECF No. 144 without prejudice to renewal if the Government relies on a forfeiture restraint.

Legitimate, untainted assets needed to retain counsel receive constitutional protection. See *Luis v. United States*, 578 U.S. 5, 8–13 (2016) (plurality opinion) (holding that pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment). ECF No. 144 preserves that issue should the Government assert a forfeiture basis for preventing use of the funds.

The Government's reliance on *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–26 (1989), and *United States v. Monsanto*, 491 U.S. 600, 614–16 (1989), concerns property subject to forfeiture and statutory pretrial restraint. Those decisions do not establish that this particular currency is forfeitable or supply the authority presently supporting its retention. The same is true of the statutory-restraint proposition for which the Government cites *Silver*. Opp. 18. Its discussion of the conditional hearing procedure under the Second Circuit's *Monsanto* and *Bonventre* decisions concerns a forfeiture restraint that it says is not in place. Opp. 17 & n.4. The present requests therefore remain directed to the asserted evidentiary need and the produced records, while ECF No. 144 remains preserved without prejudice.

## II. THE MAY 12 DETENTION AND CONTINUED PROPERTY RETENTION REQUIRE THEIR OWN JUSTIFICATION

### A. The 48-hour rule does not supply authority for the initial detention.

The Government points to the May 12 CBP encounter and the May 14 criminal charge and arrest. Opp. 26 n.6. Those dates do not establish what authorized the initial restraint or how much time elapsed before judicial review. Following a warrantless criminal arrest, a prompt judicial probable-cause determination is required. *See* *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975) (requiring a prompt judicial probable-cause determination as a prerequisite to extended restraint following a warrantless arrest). A determination within 48 hours is ordinarily prompt, but even a shorter delay may be unreasonable when used to gather evidence to justify an arrest.

See *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991) (making a judicial determination within 48 hours presumptively prompt, but recognizing that even a shorter delay may be unreasonable if used to gather evidence to justify an arrest). The Court should identify whether and when the actual restraint rested on criminal authority, immigration authority, or border inspection.

The CBP records produced November 4 make the distinction material. They record arrival in Melbourne at approximately 2:30 p.m. on May 12 and describe "Parole for Prosecution based on DEA probable cause arrest." Suppl. Decl. Ex. B, USAO_GARDINER_000273, 000275, 000277. Entries created on May 14 recount events on May 12, alongside separate inspection, referral, and detention times. The November 11 DEA report then describes a May 14 apprehension, transfer to Seminole County Jail, and a May 15 initial appearance in Orlando. USAO_GARDINER_000555–000556. These records should be reconciled by the actual times and asserted authority, not merely their date labels.

The required findings concern when criminal restraint began, what authorized it at that point, when a judicial officer made a probable-cause determination, and whether any delay served to obtain evidence needed to justify continued custody. The May 14 judicial process and the May 15 initial appearance should be placed in that actual chronology. The existing parole records, process timestamps, transfer logs, and communications assigning custodial responsibility should establish the nature and duration of each stage of custody.

### B. A lawful border inspection does not resolve every later seizure or examination.

The Government must identify the authority for each challenged examination and period of retention. *United States v. Alisigwe*, No. 24-960, slip op. at 5–6, 26–27 n.9 (2d Cir. Sept. 17, 2026), permits manual cellphone searches at the border without a warrant or individualized

suspicion, while reserving the treatment of certain forensic searches. The issues here include the ensuing retention of the devices and any materially different later examination. Those acts require findings about their time, place, nature, and asserted authority. A permissible manual border inspection does not answer those separate questions.

The cellphones and notebook remained held for approximately seventeen days between May 12 and the May 29 warrant, or fifteen days measured from the asserted May 14 criminal seizure. The required inquiry includes the length of that interval, Mr. Gardiner's possessory interest, the Government's justification, and its diligence in seeking a warrant. See *United States v. Smith*, 967 F.3d 198, 205–13 (2d Cir. 2020) (finding an unreasonable delay in obtaining a warrant after seizure of a tablet and requiring diligence in seeking judicial authorization). Transfer or booking dates do not restart that inquiry. The Government should identify the existing records showing when authorization was requested, what investigative work occurred during the interval, and what justified the delay.

*Smith* also explained that its clarified diligence principles would inform exclusionary-rule analysis in future cases. 967 F.3d at 213. Its denial of suppression rested on isolated negligence and the uncertainty of then-existing precedent. The challenged retention here occurred in 2026, after that guidance. The Court should determine the reason for the delay and the responsible officers' conduct, then apply the exclusionary rule to the evidence obtained through any established violation.

## III. THE SUPPRESSION CLAIMS MUST BE DECIDED ON AN ACCURATE RECORD

### A. The established telephone link does not dispose of the separate suppression grounds.

The opening motion identified Mr. Gardiner's statement of the 6984 number to CBP. ECF No. 145 at 9. The historical Apple registration records connect that number and account to

the iPhone 12 Pro's hardware identifiers, and the later forensic report associates the seized device with the same number and account. USAO_004766, Registrations_Account worksheet; USAO_003961, native GrayKey progress report for SDNY 11744. The subsequent seizure report identifies the corresponding handset as Exhibit N-139. USAO_GARDINER_000557. That technical linkage leaves the legality of acquisition, retention, and prewarrant access to be decided on the relevant facts.

The warrant inquiry asks whether the application established a fair probability that the device contained evidence of the alleged crimes. *United States v. Silva*, 146 F.4th 183, 188–94 (2d Cir. 2025), sustained a cellphone warrant based on case-specific allegations and reasonable inferences, while explaining that an officer's asserted expertise alone cannot supply the required nexus. Here, the Court must evaluate the information actually presented to the issuing magistrate, including the challenged cash description and acquisition chronology. Technical attribution does not resolve whether a material misstatement or omission affected that presentation or whether earlier examinations and continued retention were lawful. Later extraction results cannot be treated as information that was before the magistrate.

The Government's probable-cause authorities require consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *District of Columbia v. Wesby*, 583 U.S. 48, 57–61 (2018). The point here is the accuracy and significance of the facts supporting the asserted nexus: the actual packaging, the election-day explanation, the documented withdrawal, and the information presented when the warrant issued. *United States v. Fama*, 758 F.2d 834, 837–38 (2d Cir. 1985), recognizes that an innocent explanation can coexist with probable cause; it does not resolve an identified challenge to the affidavit's factual

presentation or to the legality of the predicate search. The Court should apply the Government's cited probability and deference standards to that accurate record.

**B. The cash description and seizure chronology must be evaluated under the corrected-affidavit standard.**

The Court should evaluate the identified packaging and chronology discrepancies under *Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978) (requiring an affidavit-veracity hearing upon a substantial preliminary showing of deliberate or reckless falsity material to probable cause). See also *United States v. Rajaratnam*, 719 F.3d 139, 146–47, 153–56 (2d Cir. 2013) (evaluating an omission's materiality by including the omitted information in the affidavit). Mr. Gardiner relies on the specific discrepancies identified in ECF No. 145 and the supporting records.

The Government's materiality cases prescribe the analysis the defense requests. *United States v. Canfield*, 212 F.3d 713, 717–21 (2d Cir. 2000) (requiring evaluation of a corrected affidavit and sustaining probable cause on the corroborated firsthand evidence remaining after correction), supplies that method. Here, the Court should evaluate the actual packaging description, the demonstrated facts known at issuance, and any lawfully obtained notebook observations together with the affidavit's remaining historical allegations. The original probable-cause determination cannot substitute for that corrected-affidavit analysis.

The Government's hearing-threshold cases likewise turn on the particular evidentiary showing. In *United States v. Skyfield*, No. 23 Cr. 569 (LJL), 2023 WL 8879291 (S.D.N.Y. Dec. 22, 2023), the Court rejected the *Franks* claim because contemporaneous police records confirmed the challenged identification statement. Id., discussion pt. II.B. *United States v. Falso*, 544 F.3d 110, 125–28 (2d Cir. 2008), rejected conjecture about omitted facts and distinguished demonstrated omissions of known adverse information. Mr. Gardiner identifies particular

affidavit language and specific photographs and custody records for comparison. Those materials should be evaluated for falsity, knowledge or reckless disregard, and materiality under *Franks*.

*Rajaratnam* recognizes that the affiant's actual state of mind may be shown circumstantially. 719 F.3d at 154–55. The ordinary selectivity addressed in *United States v. Awadallah*, 349 F.3d 42, 67–68 (2d Cir. 2003), *United States v. Mandell*, 710 F. Supp. 2d 368, 373–74 (S.D.N.Y. 2010), and the cumulative omission authorities collected at Opp. 22–23 does not authorize a materially misleading presentation made deliberately or recklessly. The defense's claim concerns identified facts bearing on the asserted narcotics connection and the acquisition and examination of the property. Those specific issues must be assessed under the governing standard.

Coleman's affidavit describes a brown paper bag containing approximately B$30,000 and bearing a politician's handwritten name, relies on the packaging to infer narcotics proceeds, and uses the cash to connect the May events to historical trafficking allegations. USAO_003905–003907, Aff. ¶¶ 11(b)–(c), 12. ECF No. 145 identifies photographs of separate bundles and a limited labeled wrapping. The defense's June 25 proffer placed that wrapping in the context of election-day travel and cash campaign contributions and expenses. June 25 Hr'g Tr. 10:21–24, 12:3–16. ECF No. 143 supplies the bank receipt and hearing excerpts. The defense challenges the narcotics-proceeds and drug-bribe inference as to all the seized cash, including the approximately B$5,000 in the labeled envelope. The Government argues that the allocation does not change probable cause. Opp. 24–25. The Court should evaluate the corrected packaging description in its election-day context, together with the remaining affidavit, and determine whether the asserted narcotics connection survives the required materiality analysis.

The chronology likewise requires examination of the information Coleman knew or recklessly disregarded when he sought the May 29 warrant. The Government's acknowledged date error should be evaluated in the context of the full affidavit, including its reference to the May 12 CBP encounter. Opp. 19 n.5, 25. The issue is whether a knowing or reckless misdescription materially affected the acquisition or evidentiary predicate presented to the magistrate. The subsequently submitted bank receipt documents the B$20,000 withdrawal; the warrant-stage inquiry remains directed to information available when the warrant issued.

The Court should adjudicate the identified packaging and chronology issues under *Franks* and separately resolve the retention and prewarrant-search grounds under their own standards. The identified, timely requested records bear on those factual questions, and Mr. Gardiner requests leave to supplement the suppression record if those records materially affect it. The independent claims concern the legality of the conduct itself and warrant their own findings.

### C. Opening a wet notebook to preserve it and examining its contents are distinct factual questions.

Coleman states that officers opened the water-damaged notebook to dry it, observed apparent payment notations, and conducted no further review. USAO_003906, Aff. ¶ 11(d) n.5. The Government adopts that account. Opp. 26. The Court should determine what officers actually did and what authority covered those acts. *United States v. Levy*, 803 F.3d 120, 122–24 (2d Cir. 2015), upheld a notebook examination and copying conducted within border-search authority. Whether the examination here occurred during such a search, a preservation process, or a later evidentiary examination requires the time, location, and handling records.

Outside a valid exception, manipulation that exposes otherwise concealed information is itself a search. See *Arizona v. Hicks*, 480 U.S. 321, 324–26 (1987) (treating manipulation to expose concealed information as a separate search rather than a mere plain-view observation).

The photographs at USAO_003991–004034 show many interior pages but do not establish when they were taken. Original timestamps and processing records should establish when the pages were photographed, whether that occurred before or after the warrant, and what authority supported any prewarrant examination.

If the prewarrant examination was unlawful, the later warrant must be genuinely independent of it. *See Murray v. United States*, 487 U.S. 533, 542–44 (1988) *(requiring a genuinely independent warrant source, including examination of whether an unlawful earlier search prompted the warrant application)*. The Government should identify who opened or examined the notebook, when and where that occurred, what was communicated to Coleman, and how the pages came to be characterized as payment records. A later judicial signature, without that factual inquiry, does not establish an independent source.

The Government's good-faith argument must be assessed under *United States v. Leon*, 468 U.S. 897, 922–23 (1984) (withholding good-faith protection when the magistrate was misled by knowing or reckless material falsehoods). *See also United States v. Reilly*, 76 F.3d 1271, 1280–82 (2d Cir. 1996), aff'd on reh'g, 91 F.3d 331 (2d Cir. 1996) (affirming suppression where officers omitted facts crucial to assessing a predicate search and could not rely on the resulting warrant in good faith). *Reilly*, which the Government itself cites, supports examining the actual extent and circumstances of any prewarrant notebook examination and what was communicated to the issuing magistrate.

*Silva* and *Falso* applied good faith to the particular records before them. *Falso* expressly distinguished *Reilly*'s demonstrated omission of known adverse information. 544 F.3d at 126–28. The Court should therefore evaluate the Government's good-faith argument against the actual

affidavit and the conduct established here, including any proven deliberate or reckless material omission, and separately address relief for an unlawful earlier search or unreasonable retention.

## IV. THE GOVERNMENT STILL MUST IDENTIFY THE FIREARMS CONDUCT AND THE SCOPE OF THE CHARGED CONSPIRACY

The Government's own authority supports the requested notice. See *United States v. Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987) (per curiam) (reversing where disclosure failed to identify which burglaries and documents were allegedly fraudulent); *United States v. Davidoff*, 845 F.2d 1151, 1154–55 (2d Cir. 1988) (requiring sufficient notice of the discrete extortion schemes the prosecution intended to prove). The unanswered issue here is the criminal conduct attributed to Mr. Gardiner, particularly the firearm-related conduct underlying Counts Two and Three, and the charging significance of the identified February 2023 and May 2026 events.

*United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004), and *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999), assess whether the indictment and other disclosures sufficiently identify the acts charged. *United States v. Torres*, 901 F.2d 205, 233–34 (2d Cir. 1990), distinguishes that notice from a demand for evidentiary detail. The opposition's examples concerning the "Player" identification and account linkage address attribution. Opp. 12–13. The Court should determine where the cited materials identify the charged firearm episode, the firearms agreement, and the role of the specified transactions.

*United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *9 (S.D.N.Y. Feb. 28, 2022), rested on the specific properties and allegedly fraudulent documents already identified and concrete examples of communications furthering the charged scheme. Here, the Government can resolve the narrowed request by identifying the allegations or disclosures that specify the firearm-related conduct and explain how the identified February 2023 and May 2026 events

relate to Count One. A general assurance of extensive discovery or future witness testimony does not identify where those answers have been supplied.

At a minimum, the Government should identify the firearm-related episode or episodes underlying Count Two, the approximate dates and locations, the related drug-trafficking conduct, and the conduct attributed to Mr. Gardiner. It should likewise identify the approximate period and nature of the firearms agreement charged in Count Three. If a prior disclosure supplies those facts, a specific reference will suffice.

As to Count One, the Government should state whether the approximately nine-kilogram February 2023 Georgia transaction and the May 12, 2026 flight or accompanying currency are alleged acts of participation in the S2 conspiracy or are offered for another evidentiary purpose. Identifying the role of those materially different episodes will clarify the accusation Mr. Gardiner must defend. The Government can resolve the issue by designating those episodes or identifying the disclosure that already does so.

The Government's cumulative conspiracy-detail authorities address broader demands. *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975), concerns enumeration of every conspiracy act, and *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001), concerns details of formation, joining, and performance. The Government invokes *Feola*, *Helbrans*, and *Ma* for related limits on overt-act detail and identification of uncharged co-conspirators. Opp. 8–12. The narrowed requests concern the episode underlying the substantive firearms charge, the scope of the separately charged firearms agreement, and the charging significance of two identified events. The Court should evaluate those requests under the notice principles applied in *Bortnovsky* and *Davidoff*.

## V. THE COURT SHOULD RESOLVE THE NARROWED DISCOVERY AND PARTICULARS REQUESTS

The November productions sharpen the materiality of the requests in ECF No. 142. The identified categories concern detention and parole authority and arrest timing; the statement identifying 6984; package-specific currency inventories and transfers; and prewarrant access to and processing of the notebook and devices. These records bear on the attribution, authenticity, condition, and handling of the evidence the Government seeks to use, as well as the preserved suppression issues.

*United States v. Rigas*, 258 F. Supp. 2d 299, 306–07 (S.D.N.Y. 2003), required a concrete showing of materiality and denied a demand for outside investigators' analytical reports based on their usefulness in sifting previously produced discovery. Here, package-specific inventories and transfer records test the asserted narcotics connection and the identity and condition of the cash. The statement and processing records address the source, attribution, and handling of the evidence. The detention and parole chronology supplies the circumstances and asserted authority under which it was acquired. The November productions identify specific entries for that inquiry. Suppl. Decl. Exs. A–B, USAO_GARDINER_000273, 000275, 000277, 000555–000557. The Court can determine discoverability item by item and develop any remaining suppression facts through focused declarations or stipulations.

*United States v. Noel*, No. 19 Cr. 830-2 (AT), 2020 WL 12834537, at *2–4 (S.D.N.Y. June 9, 2020), required a particularized basis to question completed disclosure. There, the Government represented that the investigative materials had been produced and the requested draft report did not exist; the defendant also supplied no evidence that the Bureau of Prisons participated in the investigation. Here, the November records identify concrete questions about parole for prosecution, the May 15 shipment and July 2 turnover, and evidence processing. A

focused response can identify the existing discoverable records that resolve those questions and explain any applicable possession, control, or protection issue. A Bates or native-file reference will suffice for material already produced.

Mr. Gardiner seeks material within the applicable categories of Rule 16(a)(1)(A), (B), (E), and (F), subject to Rule 16(a)(2). A Bates or native-file reference is sufficient for material already produced. For an item claimed to be protected by privilege, work product, or statute, the Court may determine the appropriate ruling or protected procedure. Focused declarations or stipulations about the relevant acts may also develop the suppression record.

The prosecutor's inquiry extends to favorable evidence known to others acting on the Government's behalf in the case. *See* *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) (requiring the prosecutor to learn of favorable evidence known to others acting on the Government's behalf in the case, including police). Because the Government relies on CBP's encounter and evidence handling, it should determine whether the relevant personnel were acting on its behalf and undertake the inquiry that relationship requires. *See also* *United States v. Coppa*, 267 F.3d 132, 142, 145–46 (2d Cir. 2001) (requiring disclosure of material favorable evidence in time for effective use). The Court should apply that obligation to the identified suppression and trial-preparation needs, together with the applicable limits and continuing obligations under 18 U.S.C. § 3500 and Fed. R. Crim. P. 16(c).

The Government's procedural objection under Local Criminal Rule 16.1 and the Court's Individual Practices in Criminal Cases ¶ 3(B) concerns compliance in connection with the original motions, not a separate conferral requirement for this reply. The defense's filed certification identifies the October 15, 2026 conference and states that the requests remained unresolved. ECF No. 142 at 3. The Government disputes the scope of that conference. Opp. 1

n.1. The defense seeks resolution of the pending requests as narrowed herein. To the extent the Court determines that further detail concerning the prior conference, a supplemental affidavit, or additional issue-specific conferral is necessary, Mr. Gardiner requests an opportunity to provide it before the affected requests are denied. That alternative request does not concede the Government's characterization of the October 15 conference.

## CONCLUSION

**WHEREFORE**, Mr. Gardiner respectfully requests that the Court require a particularized response to the currency-exchange attempts and custody discrepancy; identification by Bates or native-file reference of the existing discoverable inventory and transfer records, or production to the extent necessary; and consideration of appropriate preservation conditions, while reserving any application for return under Rule 41(g) to the district of seizure. He further requests that the Court preserve ECF No. 144 without prejudice to renewal if the Government relies on a forfeiture restraint; develop a focused record concerning detention, property retention, and notebook access and hold an evidentiary hearing where material factual disputes warrant one; adjudicate the *Franks* claim and the independent retention and prewarrant-search grounds under their respective standards; and grant the limited particulars and discovery relief addressed above, with an opportunity to supplement the original Rule 16.1 showing if the Court finds supplementation necessary.

Dated: November 13, 2026

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy has been electronically filed with the Clerk of the Court utilizing the CM/ECF system on this 13th day of November 2026.

Respectfully submitted,

**SUSY RIBERO-AYALA, P.A.**
121 Alhambra Plaza
Suite 1500
Coral Gables, Florida 33134
Telephone: (305) 854-4711
Facsimile: (305) 489-8101

By: /s/ *Susy Ribero-Ayala*
Susy Ribero-Ayala, Esquire
Florida Bar No. 993352
Sra@ralawmiami.com
*Attorney for Jonathan Eric Gardiner*