USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_______________
DATE FILED: 11/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JONATHAN ERIC GARDINER,

Defendant.

24-cr-655 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Jonathan Eric Gardiner, a/k/a "Player" ("Gardiner" or "Defendant"), moves pretrial for: (1) a bill of particulars; (2) early release of *Brady* materials; and (3) suppression of evidence and a *Franks* hearing. Dkt. Nos. 141, 142, 145.[1] For the reasons that follow, the motions are denied.

## BACKGROUND

Gardiner is a defendant in a multi-defendant criminal case in this District in which he is charged with federal crimes related to the importation of narcotics and the possession, use, and carriage of firearms in connection with the narcotics importation crimes.

On May 12, 2026, Gardiner first came into United States custody when he was rescued by the United States Coast Guard after a turboprop plane in which he and ten other individuals were passengers crashed into the waters off the coast of Florida. Dkt. No. 1 ¶ 14. He was then detained by officers of the United States Customs and Border Patrol ("CBP"), based on information that he was the subject of an ongoing investigation by the United States Drug Enforcement Administration ("DEA"). CBP also conducted a border search of Gardiner and his

[1] Plaintiff also moved for return of property and for a *Monsanto* hearing, Dkt. Nos. 143–44, but he has withdrawn those motions.

possessions, including a cross-body bag that was in his possession. CBP found three cellphones, a notebook, and bulk currency inside the bag. Gardiner was arrested two days later.

Gardiner was charged in a complaint (the "Complaint") sworn to in this District by DEA Special Agent Michael Coleman ("SA Coleman") with the illegal importation of cocaine from The Bahamas into the United States in violation of 21 U.S.C. § 963 and 18 U.S.C. § 3238. Dkt. No. 1. The Complaint charged that Gardiner conspired with one or more drug trafficking organizations ("DTOs") to import ton-quantities of cocaine from Colombia and elsewhere through The Bahamas and ultimately into the United States. *Id.* ¶ 6. Part of the Government's allegations relate to Gardiner's involvement with a Georgia-based DTO (the "Georgia DTO") that was the subject of a June 2024 indictment in the Northern District of Georgia. *Id.* ¶¶ 7–11. The Complaint alleged, among other things, that in or about February 2023, Gardiner supplied a nine-kilogram shipment of cocaine to the Georgia DTO which was sent by him from The Bahamas to Miami, Florida, where it was then received and transported by Gardiner's co-conspirators to Georgia. *Id.* ¶¶ 8, 10(r). As the Complaint disclosed, the allegation was based in part on communications found in an iCloud account belonging to Gardiner and which was seized and searched pursuant to warrant. *Id.* ¶ 9 & n.6. The Complaint further charged that, following the February 2023 shipment, in or about June 2023, the leader of the Georgia DTO discussed with a DEA confidential source procuring a larger amount of narcotics, approximately 200 kilograms or more of cocaine, from Gardiner. *Id.* ¶ 9(g).

Another part of the Government's allegations relates to Gardiner's involvement with a group of individuals previously charged in this District (the "Charged Defendants") with federal narcotics importation and firearm offenses, arising out of their participation in trafficking cocaine through The Bahamas and into the United States with the support and protection of

corrupt Bahamian government officials, including politicians and high-ranking members of the Royal Bahamas Police Force and Royal Bahamas Defence Force. *Id.* ¶¶ 12–13. Among the officials allegedly bribed by the Charged Defendants was a Bahamian politician ("Politician-1") who agreed to provide security for a planned cocaine shipment. *Id.* ¶ 13(d). The Complaint alleged that a confidential source, who had been posing as an associate of an international drug trafficking ring that imported ton-quantities of cocaine into the United States and who was in contact with the Charged Defendants, provided information that Gardiner was involved with a drug load in or about 2023 in Rum Cay, Bahamas, during which the plane used to transport cocaine crashed and the drug pilot died; that Gardiner used a phone number ending with the digits 2595 (the "2595 Number"); that Gardiner typically carried and used multiple phones; and that he owned a business that he used to launder his narcotics trafficking proceeds. *Id.* ¶ 12(a)–(c).

Among the items recovered by CBP following Gardiner's detention were three phones, including a phone with the 2595 Number, and a cross-body bag which held a brown paper bag containing approximately $30,000 in bulk Bahamian currency and an envelope that was labeled with the handwritten name of Politician-1. *Id.* ¶ 14(b).

Gardiner was indicted in this District on June 16, 2026, on a three-count superseding indictment. Dkt. No. 113 (the "S2 Indictment"). Count One charges him with conspiracy, from at least in or about May 2021 up to and including in or about May 2026, to illegally import cocaine from The Bahamas into the United States in violation of 21 U.S.C. § 963 and 18 U.S.C. § 3238. *Id.* Count Two charges him with the knowing use, carriage, and possession of firearms during and in relation to and in furtherance of the drug trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A), 3238, and 2. *Id.* Count Three charges him with

conspiracy to use, carry, and possess firearms in connection with the drug trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 924(o) and 3238. *Id.*

The indictment to which the superseding indictment joins Gardiner was originally returned on November 21, 2024, Dkt. No. 3, and superseded on April 8, 2025, Dkt. No. 54 (the "S1 Indictment"). That indictment names thirteen defendants. Dkt. No. 54. It alleges a conspiracy commencing in at least May 2021 to smuggle cocaine through The Bahamas into the United States with the support and protection of corrupt Bahamian government officials. *Id.* ¶ 1.

On October 16, 2026, Gardiner moved for: (1) a bill of particulars; (2) early release of *Brady* materials; (3) return of property; (4) a *Monsanto* hearing; and (5) suppression of evidence and a *Franks* hearing. Dkt. Nos. 141–45. The Government filed its memorandum of law in opposition to Gardiner's pretrial motions on November 6, 2026. Dkt. No. 150. Gardiner filed a reply memorandum in further support of his pretrial motions on November 13, 2026. Dkt. No. 152.[2]

The Court held a hearing on the pretrial motions on November 20, 2026. *See* Dkt. No. 154. At the hearing, defense counsel indicated that Gardiner no longer intends to pursue his pretrial motions for the return of property and for a *Monsanto* hearing. *See* Dkt. Nos. 143–44. The Court accordingly deems those motions to be withdrawn.

## DISCUSSION

### I. Gardiner's Motion for a Bill of Particulars

Gardiner's first motion asks that the Court order the Government to provide a bill of particulars. Dkt. No. 141. He seeks particulars identifying the approximate point at which he

---

[2] On November 17, 2026, at the Court's request, the Government delivered to the Court via email with a copy to Defendant the relevant chain-of-custody documents for the phones and notebook obtained at the time of Gardiner's rescue by the United States Coast Guard and turned over to the DEA at the time of Gardiner's arrest. *See* Dkt. No. 153.

joined the conspiracy charged in Count One of the S2 Indictment, the Charged Defendants with whom he allegedly agreed, and the shipments or transactions through which he participated. Dkt. No. 141 at 3. He also seeks particulars of the firearm offenses alleged in Counts Two and Three, including the date or location of such offenses, the predicate transaction or transactions in connection with which a firearm was used or possessed, and the persons with whom Gardiner conspired. *Id.* Gardiner argues that a bill of particulars is necessary given the alleged five-year length of the conspiracy and the volume of documents that have been produced in Rule 16 discovery. *Id.* at 2–3. At the November 20, 2026 hearing, defense counsel focused on two sets of particulars: Gardiner's demand to know whether the conduct arising from the Georgia investigation is alleged to be in furtherance of the Count One conspiracy, and the particulars of the firearms counts.

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (same). "'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'" *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)). The court has broad discretion in determining whether to grant a motion for a bill of particulars. "Courts are only required to grant a bill of particulars 'where the charges of the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574. The Court therefore considers not only the language of the indictment but also "'the totality of the information available to the defendant' including through pretrial discovery." *United States v. Ray*, 2021 WL 3168250, at *3 (S.D.N.Y. July 27, 2021) (quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000)); *see United States v. Perez*, 2025 WL 41612, at *4 (S.D.N.Y. Jan. 7, 2025) (volume of discovery alone does not require a bill of particulars where "the defendant has been provided sufficient information through other means to prepare for trial").

To be sure, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge." *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998). But a defendant is "not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding [a] conspiracy," *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996), and such demands "are routinely denied," *United States v. Helbrans*, 547 F. Supp. 3d 409, 432 (S.D.N.Y. 2021) (citation omitted). Nor is a defendant entitled to the precise dates on which the conspiracy was formed or he joined it, because that is evidentiary detail. *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001).

Gardiner has not established his entitlement to a bill of particulars.[3] Gardiner is not entitled to particulars specifying whether the alleged conduct with respect to the Georgia DTO is

[3] In addition, Gardiner has failed to file the affidavit required by Local Criminal Rule 16.1. *See*

alleged to be part of the Count One conspiracy. At a minimum, the Complaint and the search warrant affidavit sworn to by SA Coleman make clear that it is part of the Count One conspiracy, as the Government emphasized at oral argument. The Complaint describes Gardiner's interactions with the Georgia DTO in detail as supporting the existence of probable cause. Dkt. No. 1 ¶¶ 7–11. The search warrant affidavit produced to Gardiner relies on the same conduct to establish probable cause. That conduct could not establish probable cause with respect to the Count One conspiracy if it was not in furtherance of that conspiracy. At the hearing, the Government confirmed that it intends to offer the Georgia DTO conduct as acts in furtherance of the conspiracy charged in Count One of the S2 Indictment. The Government further represents, without dispute, that it has provided Gardiner full extractions or contents of his three cellphones and certain of his co-defendants' electronic devices and electronic accounts, lengthy search warrant applications outlining much of the Government's proof, DEA reports including the debriefings of confidential sources, video and audio recordings of the meetings that the confidential sources held with the Charged Defendants, communications between co-conspirators about the 2023 narcotics transaction described in the Complaint, recordings of Gardiner's jailhouse calls since his arrest in 2026, and materials provided by third parties pursuant to grand jury subpoenas and voluntary requests. Dkt. No. 150 at 5–6. Gardiner possesses what he is entitled to in terms of notice in connection with Count One. What remains is evidentiary detail to which Gardiner is not entitled. *See United States v. Nunez*, 2025 WL 547805, at *3 (S.D.N.Y. Feb. 19, 2025) (no bill of particulars necessary where indictment

---

Dkt. No. 150 at 1 n.1. The motion thus is properly denied for that reason alone. *See United States v. Bell*, 2020 WL 7260518, at *5 n.1 (S.D.N.Y. Dec. 10, 2020).

detailed the type and quantities of the drugs involved and contained concrete details about defendant's alleged participation in the conspiracy).

Gardiner also has not shown a need for further particulars with respect to Counts Two and Three, which charge him with aiding and abetting the use, carriage, and possession of firearms in connection with the cocaine importation conspiracy and the conspiracy to use, carry, and possess firearms in connection with the same. Dkt No. 113 ¶¶ 6–9. At the hearing, the Government confirmed that the charges against Gardiner include that he was a member of the conspiracy charged in the S1 Indictment. That indictment describes at length the conspiracy's use of firearms and thus provides notice to Gardiner of the conduct with which he is charged: in maintaining security for the drug-trafficking conspiracy, members of the conspiracy used weapons to protect and further their operations, Dkt. No. 54 ¶ 21; Defendants Curtis and Symonette carried and used firearms during and in connection with the conspiracy, including firearms they carried while wearing their Royal Bahamas Police Force uniforms and assisting and meeting with purported drug traffickers, *id.* ¶ 22; and members of the conspiracy also discussed the possibility of importing cocaine from Colombia into The Bahamas in exchange for weapons, *id.* ¶ 21(b).

In addition to the warrant affidavits, reports, and other discovery that the Government has produced, the Government represented without dispute at the hearing that it has directed defense counsel to specific recordings relevant to the firearms counts. Gardiner responds that the indictments do not specify how he conspired or aided and abetted the use of firearms and that there are no recorded calls linking him to the firearms counts. But the gaps in the notice provided in the indictments are filled by the discovery which gives Gardiner notice of the firearm possession he is alleged to have aided and abetted. Gardiner's argument that the evidence does

not show that he aided and abetted the possession of firearms or participated in a conspiracy to use, carry, or possess firearms is not an objection to the particulars. It goes to the sufficiency of the evidence, which is not a proper subject of a pretrial motion. *See United States v. Phillips*, 690 F. Supp. 3d 268, 288 (S.D.N.Y. 2023). Gardiner will have the opportunity to raise issues regarding sufficiency at trial. The Court accordingly concludes that Gardiner has sufficient information "to prepare for trial, prevent surprise, or interpose a double jeopardy claim." *United States v. Calvente*, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013).

## II. Gardiner's Rule 16 and *Brady* Motion

In his second pretrial motion, Gardiner moves to compel Rule 16, *Brady*, and *Giglio* disclosures. Dkt. No. 142. He seeks production of material concerning the May 12, 2026 flight and rescue, including documents regarding his arrest, the searches and seizures conducted by law enforcement, and the forensic examination of his devices. *Id.* In reply, Gardiner narrows his request to documents concerning the timing of his arrest and the authority pursuant to which he was arrested; "the statement identifying 6984"; "package-specific currency inventories and transfers"; and "prewarrant access to and processing of the notebook and devices." Dkt. No. 152 at 16. The Government responds that it has faithfully discharged its Rule 16 and *Brady* obligations and will continue to do so, that discoverable material has already been disclosed, and that Gardiner failed to comply with Local Criminal Rule 16.1 because defense counsel neither filed the required affidavit nor conferred with the Government about most of the requested categories of information. Dkt. No. 150 at 1 n.1, 13–14.

Federal Rule of Criminal Procedure 16(a)(1)(E) does not require the Government to produce all information potentially relevant to a defendant, including confidential information about law enforcement methods. *See, e.g.*, *United States v. Córdoba Ruiz*, 2023 WL 6811646, at *3 (S.D.N.Y. Oct. 16, 2023). It requires the Government to disclose documents and objects that

are material to preparing the defense, that the Government intends to use in its case-in-chief, or that were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Under Rule 16, "[e]vidence is material 'if it could be used to counter the government's case or to bolster a defense.'" *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence [will] enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (citation omitted). Rule 16 "does not entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up." *United States v. Scully*, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) (internal quotation marks and alteration omitted). The defendant bears the burden of making a *prima facie* showing of materiality, *Clarke*, 979 F.3d at 97, and "'must offer more than the conclusory allegation that the requested evidence is material,'" *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003) (quoting *United States v. Ashley*, 905 F. Supp. 1146, 1168 (E.D.N.Y. 1995)).

"Under *Brady*, the prosecution is required to disclose evidence 'where the evidence is *material* either to guilt or to punishment.'" *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "'Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.* (quoting *Turner v. United States*, 582 U.S. 313, 324 (2017)). A *Brady* disclosure must be made "in time for its effective use" at trial. *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001); *see United States v. Halloran*,

821 F.3d 321, 341 (2d Cir. 2016). *Giglio* material likewise need only be produced "with sufficient time to permit Defendant to make effective use of them at trial." *United States v. Ortiz*, 2026 WL 3093446, at *1 (S.D.N.Y. Oct. 16, 2026). The Court ordinarily accepts the Government's representation that it has complied with and will continue to comply with these obligations. *See United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969).

The Court's ability to resolve this motion has been frustrated by Gardiner's failure to follow Local Criminal Rule 16.1. Although certain of Gardiner's requests, such as those for photographs of the seized currency and phones and chain of custody records appear to fall well within the bounds of Rule 16, others such as maintenance records relevant to the emergency and concerning the aircraft's legal operating status, the facts known to the officers at the time of arrest, and records regarding the treatment of other passengers rescued by the Coast Guard, appear at first glance to be beyond the bounds of Rule 16 or *Brady*. In addition, the Government represents that it has already produced Rule 16 and *Brady* material. Dkt. No. 150 at 14. Because the submissions of the parties do not reflect that they have discussed which materials are truly subject to Rule 16 and *Brady*, the Court cannot determine what, if anything, remains outstanding or in genuine dispute. Gardiner's motion is therefore denied without prejudice. *See United States v. Bell*, 2020 WL 7260518, at *2 (S.D.N.Y. Dec. 10, 2020) (citing cases).

To the extent that Gardiner wishes to renew this motion, defense counsel is directed to confer with the Government no later than November 24, 2026. Any renewed motion shall be filed no later than November 30, 2026, and shall be accompanied by an affidavit in conformity with Local Criminal Rule 16.1.

## III. Gardiner's Motion to Suppress Evidence and for a *Franks* Hearing

Finally, Gardiner moves for a *Franks* hearing and suppression of evidence obtained from three phones and a notebook pursuant to a May 29, 2026 search warrant. Dkt. No. 145.

A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation bears the "burden to establish that the search [or seizure] violated his Fourth Amendment rights." *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023). "[A] search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable," *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017), and the issuing judge's "determination of probable cause should be paid great deference by reviewing courts," *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation omitted). A defendant may nonetheless "challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *see Franks v. Delaware*, 438 U.S. 154 (1978). "To obtain a *Franks* hearing on a motion to suppress on the basis of alleged misstatements or omissions in a warrant affidavit, a defendant must make a *substantial* preliminary showing that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth'; and (2) those misrepresentations or omissions were material, or 'necessary to the issuing judge's probable cause finding.'" *United States v. Nejad*, 436 F. Supp. 3d 707, 718–719 (S.D.N.Y. 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)).

As to the first prong, the defendant must present "credible and probative evidence" that a misstatement or omission "in a [warrant] application was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (quoting *Awadallah*, 349 F.3d at 68). In the case of an omission, recklessness may be inferred "where the omitted information was 'clearly critical' to the probable cause determination." *Rivera v. United*

*States*, 928 F.2d 592, 604 (2d Cir. 1991). It is not sufficient, however, for the movant to show that "a reasonable person would have included the omitted information." *Rajaratnam*, 719 F.3d at 154. "[T]he inference is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary to the [warrant] application." *Id.* at 155.

As to the second prong of materiality, the court "consider[s] a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information." *Ganek*, 874 F.3d at 82. "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). The defendant's burden is "a heavy one that requires more than a mere conclusory showing." *United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023).

The Coast Guard rescued Gardiner on May 12, 2026, and recovered the three phones and the notebook. Dkt. No. 150 at 4. He was turned over to CBP that day, and CBP held him on its own authority until May 14, 2026, when he was charged in a criminal complaint in this District and arrested by the DEA. *Id.* at 4–5. He was presented in the Middle District of Florida on May 15, 2026, and then transferred to this District. *Id* at 5.[4] On May 29, 2026, SA Coleman swore to

---

[4] Gardiner sets out the sequence of events as follows. He was rescued on May 12, 2026 and transported to medical facilities for treatment; while being treated, he remained continuously under the supervision and control of federal authorities and his cellular telephone was confiscated; while the other passengers were taken to a hotel for the night, he was placed in a holding cell; on May 13, he was handcuffed and taken to a holding cell at Port Canaveral and then to Seminole County Jail; he was subsequently paroled into the United States; on May 14, 2026, he was charged in a complaint sworn by SA Coleman; and on May 15, 2026, he was

an affidavit in support of a warrant to search the phones and notebook (the "Search Warrant Affidavit"), and Magistrate Judge Barbara C. Moses issued the warrant.

The Search Warrant Affidavit set out facts establishing probable cause that Gardiner committed the federal crimes of conspiracy to commit money laundering and narcotics conspiracy in violation of 18 U.S.C. § 1956(h) and 21 U.S.C. §§ 952, 959, and 963. It describes the DEA's investigation, since at least 2022, of DTOs moving ton-quantity cocaine shipments through The Bahamas into the United States. Search Warrant Aff. ¶ 10(a). It identifies Gardiner as a foreign supplier to the Georgia DTO who sent a multi-kilogram shipment from The Bahamas to Miami in February 2023. *Id.* ¶ 10(c). It reports another co-conspirator's statement that he was in direct communication with Gardiner, who was "trying to keep his involvement below the radar of law enforcement." *Id.* ¶ 10(g). It describes recorded discussions identifying Politician-1 as providing protection for the DTO's shipments, *id.* ¶¶ 10(f), (i), and states that, when rescued, Gardiner had the three phones, the notebook, and bulk cash bearing Politician-1's handwritten name, *id.* ¶ 11(b). SA Coleman further relays information that he learned from a confidential source that Gardiner typically carried and used multiple phones, and that he owned a business that he used to bid on Bahamian government-issued construction contracts and to launder his narcotics trafficking proceeds. *Id.* ¶¶ 10(h), 11(g). Based on SA Coleman's training and experience, the affidavit states that narcotics traffickers and money launderers commonly store evidence of their crimes on such devices. *Id.* ¶¶ 12–16.

The Complaint, which was attached to the Search Warrant Affidavit, provides further support for probable cause. It recounts a co-conspirator's statement in June 2023 that Gardiner was his source of cocaine, could coordinate loads of 1,000 kilograms or more, had five private

---

formally arrested pursuant to the complaint. Dkt. No. 118 at 1–3.

planes, and flew from the "islands" to Florida. Compl. ¶ 11(b). It also describes Gardiner's involvement in a 2023 shipment in Rum Cay, The Bahamas, during which the plane crashed and the pilot died. *Id.* ¶ 13(c).

Defense counsel focuses on two alleged defects. The first concerns the bulk currency. The affidavit describes a brown paper bag containing $30,000 in bulk Bahamian currency "labeled with the handwritten name of Politician-1." Search Warrant Aff. ¶ 11(b). In fact, as Gardiner argues, the photographs of the seizure do not depict a brown paper bag with the name of Politician-1. The photographs show separate stacks of currency in a bag, with Politician-1's name appearing only on torn wrapping around a portion of the cash. Dkt. No. 145 at 2–3. Gardiner also argues that the affidavit omitted that May 12 was a Bahamian Election Day and that The Bahamas does not limit political contributions. *Id.* at 2. He asks that the corrected affidavit reflect that only a portion of the bulk cash he was carrying had the name of Politician-1, and that it include the explanation counsel offered at his June 25, 2026 detention hearing: that Gardiner had withdrawn approximately $20,000 in cash the day before the crash and could have used it for campaign contributions. *Id.* at 17.

The second concerns the arrest dates and the "length and circumstances of [Gardiner's] precomplaint federal custody." *Id.* at 4, 7. The affidavit states in one place that the phones and notebook were seized incident to Gardiner's arrest on May 14, 2026, Search Warrant Aff. ¶ 3(a)–(d), and in another that he was arrested and the items were seized by the DEA on May 16, 2026, *id.* ¶ 11(f). Gardiner asks that the corrected affidavit reflect that he was rescued, and the bag, phones, and notebook were first seized, on May 12, that he was charged in a criminal complaint on May 14, and that he was presented on May 15. Dkt. No. 145 at 4–7, 17. He argues that these errors "prevent[ed] the issuing magistrate from assessing whether the Government's acquisition,

retention, and prewarrant access were lawful." *Id.* at 7. He also argues that the Government must identify the legal and/or statutory authority under which he was held from May 12 until the Complaint was filed, *id.* at 7–8, and questions whether officers accessed the phones before the warrant issued, pointing to photographs of the phones that record their IMEI identifiers, *id.* at 12.[5]

Neither argument warrants suppression or a *Franks* hearing. Corrected as Gardiner proposes, the Search Warrant Affidavit still establishes ample probable cause. Nothing in the probable cause showing turned on the date of Gardiner's rescue, arrest, or presentment, or on the date his property was first seized. Whether he was turned over to the DEA on May 14, as was the fact, or on May 16, as one paragraph mistakenly states, has no bearing on whether there was probable cause that he committed the charged crimes or that evidence would be found on the seized items. Nor would it have mattered if the affidavit had stated that only a portion of the cash bore Politician-1's name. The significance of the cash was that Gardiner was carrying a sum that could serve as a bribe, marked with the name of a politician identified as taking bribes in exchange for providing protection for the DTO's shipments. That remains true whether the name appeared on the bag itself or on wrapping around some of the currency. Finally, it would not have made a difference if the Search Warrant Affidavit had contained Gardiner's self-serving, innocent explanation for the cash. A magistrate judge reviewing a search warrant affidavit for probable cause is not required to accept defense counsel's unsupported rationalizations made after the fact. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)

---

[5] Gardiner's motion originally sought suppression of the notebook and any evidence derived from it on the theory that officers' pre-warrant inspection of it may have exceeded any effort to dry the waterlogged pages and amounted to evidentiary examination. Dkt. No. 145 at 5, 12–13; Dkt. No. 152 at 12–14. At the November 20, 2026 hearing, defense counsel withdrew the motion to the extent it seeks a *Franks* hearing or suppression with respect to the notebook.

("The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause [to issue a search warrant]. Neither should it preclude a good faith belief in probable cause." (internal citations omitted)); *Galgano v. Cnty. of Putnam, N.Y.*, 2024 WL 1623401, at *74 n.133 (S.D.N.Y. Apr. 15, 2024) ("[T]he availability of alternative explanations for conduct described in a [search] warrant is not relevant to the question of whether the officers, at the time they sought the warrant, had probable cause."). In determining whether it was probable that crimes had been committed, the magistrate judge could and would have relied on the evidence provided by percipient witnesses at the time of the crimes and as reflected in recorded conversations.

Moreover, even if the omitted and mistaken information could be deemed to be material, Gardiner has failed to make a substantial preliminary showing that the omission or misstatement was "'designed to mislead' or was 'made in reckless disregard of whether it would mislead.'" *Rajaratnam*, 719 F.3d at 154 (citation omitted). At the hearing, defense counsel conceded that there is no evidence that SA Coleman acted intentionally or recklessly, and the record confirms as much. SA Coleman accurately stated the arrest date elsewhere in the Search Warrant Affidavit and attached the Complaint, which reflects the same date. There is no reason to believe that the discrepancy regarding the arrest date was anything other than an inadvertent mistake. The location of Politician-1's name was equally incriminating whether it appeared on the bag or on wrapping around some of the cash. SA Coleman would have had no reason to state that the bag was labelled with the name of Politician-1 unless he believed it; the discrepancy is insignificant. The election explanation was first offered by defense counsel at the June 25, 2026 detention hearing, nearly a month after SA Coleman swore to the Search Warrant Affidavit. *See* Dkt. Nos. 118, 121. There is no evidence that SA Coleman was aware of the explanation earlier.

The failure to include in a search warrant affidavit a rationalization that the Government is not provided until *after* the search warrant affidavit is prepared and a warrant is executed cannot be reckless or intentional. Even had it been available, its omission would not support an inference of recklessness, because it was not "'clearly critical' to the probable cause determination." *Rivera*, 928 F.2d at 604; *see also United States v. Lahey*, 967 F. Supp. 2d 698, 710 (S.D.N.Y. 2013). In the face of counsel's proffered explanations for the cash, and considering that explanation as well as the facts set forth in the Complaint and Search Warrant Affidavit, Judge Woods nonetheless concluded that "[t]he weight of the evidence against the defendant as proffered by the government is very strong." Dkt. No. 121 at 26. The Court cannot conclude that the information provided by counsel was "clearly critical" when that information was consistent with the Government's theory of guilt.

None of Gardiner's other arguments support a *Franks* hearing or suppression of the evidence seized from the phones or notebook. Gardiner contends that the Search Warrant Affidavit fails to tie the phones to any particular number used by him in connection with criminal activity and rests only on a general inference that phones store data;[6] that the statement attributed to co-conspirator Orozco-Toro in Paragraph 10(g) about Gardiner was not based on any direct communication with him; and that the allegations about his construction business are not evidence of money laundering absent identified transactions. Dkt. No. 145 at 8–10, 13. It is not the province of the Court to determine whether it would have found probable cause in the first place. The officers executing the warrant were entitled to rely on the Magistrate Judge's

[6] In support of this argument, Gardiner's motion represented that he had supplied the telephone number ending in 6984 to CBP officers following his rescue, and characterized that statement as an undisputed admission. Dkt. No. 145 at 9; *see* Dkt. No. 152 at 8. After briefing closed, defense counsel withdrew that representation. Dkt. No. 155. The Court has not relied on it.

conclusion that there was probable cause. *See United States v. Cancelmo*, 64 F.3d 804, 809 (2d Cir. 1995) (declining to hold that agents "acted unreasonably in accepting the magistrate's legal conclusion that probable cause existed"); *United States v. Zeitlin*, 2024 WL 3429506, at *7 n.79 (S.D.N.Y. July 15, 2024) ("[A]n executing officer is entitled to rely on the magistrate judge's determination that a warrant application was sufficient to justify their search—that is, the mere fact that a warrant was issued from a federal judge 'normally suffices to establish' that an officer acted in good faith in executing a search." (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982))).

But even on de novo review, the Court would readily reach that conclusion. As a general matter, a defendant's possession of multiple cell phones may be probative of involvement in drug trafficking. *United States v. Green*, 2021 WL 1877236, at *7 (W.D.N.Y. Feb. 3, 2021), *report and recommendation adopted*, 2021 WL 1856949 (W.D.N.Y. May 10, 2021). And here, the evidence went beyond the generalized assertion. The incorporated Complaint described a co-conspirator's texts to Gardiner during the February 2023 shipment to the Georgia DTO, including one asking whether he needed to "buy more time" and another thanking Gardiner once the deal was done. Compl. ¶ 10(o), (q). The Government need not establish that Gardiner used his phones to engage in illegal activity. It is sufficient that there be a "fair probability" that evidence of criminal activity would be found on the phones. *United States v. Silva*, 146 F.4th 183, 190 (2d Cir. 2025). As to Orozco-Toro, his statement does not need to rest on direct communication with Gardiner to bear sufficient indicia of reliability. *See United States v. Johnson*, 659 F. App'x 674, 679 (2d Cir. 2016) (summary order) (probable cause existed to search a defendant's car based on statements made by the defendant's co-conspirator and corroborating observations made by law enforcement); *United States v. Rueda*, 549 F.2d 865,

870 (2d Cir. 1977) (DEA agents properly relied on statements of co-conspirator who had "personal knowledge of the events establishing [defendant's] complicity" in helping to establish probable cause for his arrest). And probable cause did not require the affidavit to identify specific laundering transactions; the confidential source's account that Gardiner used his business to launder narcotics proceeds, together with the evidence of his trafficking, was sufficient.

Finally, Gardiner calls into question the time between the seizure of his property and the warrant application, but he does not argue that the Government unreasonably delayed, and for good reason. Gardiner does not challenge the initial seizure of the phones or the notebook, and the search of chattels, including a cellphone, at the border is a routine search that law enforcement may conduct without probable cause or even reasonable suspicion. *See United States v. Alisigwe*, 193 F.4th 90, 102 (2d Cir. 2026). Law enforcement may also hold property without a warrant while it seeks one, but it may not unreasonably delay in doing so. *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020). Courts consider: "(1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the sized item, and (4) the strength of the state's justification for the delay." *Id.* at 206. Even an unreasonable delay warrants exclusion only if officers acted "deliberately, recklessly, or with gross negligence," or the violation results from "recurring or systemic negligence." *Id.* at 211. Here, fifteen days elapsed between the DEA's custody of Gardiner's property on May 14, 2026 and the warrant application on May 29, but five of those days (including Memorial Day) were weekends, leaving ten business days. *See, e.g.*, *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (eleven-day delay between time police seized package and secured search warrant was not unreasonable, given that delay included two

weekends and Christmas holiday); *United States v. Watson*, 2023 WL 7300618, at *9 (E.D.N.Y. Nov. 6, 2023) ("Six of these days were weekends and therefore may be discounted."). That is less than the eleven days the Second Circuit has stated "'might well' constitute an unreasonable delay." *Smith*, 967 F.3d at 206 (quoting *Martin*, 157 F.3d at 54). Gardiner was detained on federal felony charges throughout that period and never requested return of his property. His "continued inability to possess or use the cell phones while incarcerated significantly diminishes the importance of their prompt return." *Green*, 2021 WL 1877236, at *6. And because the Government had probable cause, it had more time to seek a warrant. *See Smith*, 967 F.3d at 209 (explaining that "[t]he fact that there was probable cause—rather than merely reasonable suspicion—allowed more time for the police to retain possession of the tablet pending their application for a search warrant" because "[a]ll else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures" (citation omitted)). Although the Government has not proffered what it did during those ten business days, it need not. None of the other factors weigh in favor of Gardiner, and Gardiner has identified no facts that would support exclusion of the evidence on the basis of unreasonable delay.

## CONCLUSION

For the foregoing reasons, Gardiner's pretrial motions for a bill of particulars and for suppression of evidence and a *Franks* hearing are DENIED. His motion for early release of *Brady* materials is DENIED without prejudice to renewal, and his motions for return of property and a *Monsanto* hearing are deemed to be WITHDRAWN.

The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 141–45 and 155.

SO ORDERED.

Dated: November 23, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge